In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-01-00293-CR

____________


MICHAEL CONRAD DEASON, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 184th District Court

Harris County, Texas

Trial Court Cause No. 826608






O P I N I O N

 A jury convicted appellant of capital murder. The State did not seek the death
penalty, and punishment was assessed at confinement for life in prison. We affirm.


FACTS

 On October 15, 1999, at approximately 11:30 p.m., Demetrius Pradia,
appellant's co-defendant, was waiting outside the home of Edward Davis. Davis,
who knew Pradia, allowed him to enter his home. Appellant then came to Davis's
door and was admitted by Pradia. Appellant was carrying a semi-automatic pistol
and, immediately upon entering, ordered Davis to take off his watch and bracelet. 
Appellant asked Davis for the location of Davis's safe. Davis explained that his safe
had been stolen a month before in a burglary and told appellant that his roommate,
Louis Lyons, had a safe in his room. 

 Appellant escorted Davis at gunpoint to Lyons's bedroom and ordered Davis
to kick down Lyons's bedroom door. Davis pointed to the safe, but told appellant
that he did not have Lyons's safe combination. In the meantime, Irving Jamison, a
former roommate of Davis, entered the house and went upstairs. As soon as Jamison
arrived upstairs, appellant robbed him of his jewelry. Pradia observed that someone
had accompanied Jamison, but had remained outside in a vehicle. Pradia then went
outside and yelled at Michael Ransberg, Jamison's friend, to come into the house. 
When Ransberg reached the top of the stairs, appellant also robbed him. Ransberg
asked if he could leave because he felt ill, but Pradia and appellant refused, and
Ransberg remained upstairs. Pradia went into Lyons's bedroom and returned with a
revolver. As Ransberg's condition worsened, appellant told Ransberg, Davis, and
Jamison to lie face down on the floor. Ransberg began drooling and having a seizure. 
 Lyons, Davis's roommate, arrived home at about 1:00 a.m. When Lyons
walked into the house, Pradia told him Davis was upstairs. Lyons went up the stairs
and saw all three of the victims face down on the floor. Appellant told Lyons to join
the others on the floor. Lyons pleaded with Pradia and appellant to get a spoon so
that Ransberg would not swallow his own tongue. Pradia stated that it did not matter. 
Appellant then commanded Lyons to open his bedroom safe. Lyons, who had just
purchased the safe, was unable to open it.

 Suddenly, Davis pushed Jamison into Pradia. Jamison and Pradia fell and 
briefly wrestled. During their scuffle, Pradia's gun discharged, and Jamison stood
up and fled the house. Davis then pushed Pradia down the stairs causing both of them
to stumble down the stairwell. Pradia yelled to appellant for help. Lyons used
Davis's altercation as a distraction and jumped out of the second-story window. 
Appellant ran down the stairs to assist Pradia, and appellant shot Davis in the chest. 
Both appellant and Pradia then went upstairs to Ransberg. Appellant fatally shot
Ransberg. While appellant and Pradia were upstairs with Ransberg, Davis fled the
house and called 911 from a neighbor's house.

 Davis positively identified appellant in a photo-spread with "100%"
confidence. Before that photo-spread, Davis was shown a different photo-spread that
did not contain appellant's photograph, and he was unable to identify anyone. Lyons
originally described appellant as having "dread locks", but later specified that he
meant that appellant had hair that was clumped together. Lyons positively identified
appellant in a videotaped line-up. Pradia, appellant's co-defendant, testified at
appellant's trial and identified appellant as Ransberg's killer.

AKE (1) MOTION and EXCLUSION OF EXPERT TESTIMONY

 In his first and second points of error, appellant contends the trial court erred
by not allowing appellant's expert on misidentification to testify and by denying
appellant's request for funds to hire an expert on the issue of identification. 

 We first consider the trial court's refusal to grant appellant funds to hire an
expert on identification. The trial court found appellant indigent in October 1999. 
Nearly a year later, in October 2000, appellant filed an ex parte motion requesting
funds for an expert witness, Dr. Jerome Brown. Appellant's motion had no
supporting evidence, statements, or expert's curriculum vitae attached. The trial court
held a pretrial ex parte hearing to consider the motion on the day appellant filed it. 
During the hearing, appellant outlined his reasons for requesting an expert. These
included a claim of lack of physical or scientific evidence linking appellant to the
scene. Appellant further emphasized that there were only two eyewitnesses that
placed him at the scene of the crime, one of whom had been forced to lie face down
on the carpet while the lights in the house were turned off. Moreover, appellant had
two witnesses who placed him elsewhere on the night the crime was perpetrated. 

 The trial court ruled it would not provide appellant with funds to hire an expert
but explained that, "If things change, maybe after I hear the testimony, [if] there is
some key issue on [identification] testimony where I think that an expert's testimony
has [a] more probative effect than prejudicial effect . . . you may certainly re-urge
[sic] this motion after the pretrial hearing and you can re-urge [sic] it at trial. But, at
this time, it is denied." Appellant reurged the motion several times before the end of
trial, and before beginning his case-in-chief, made a proffer regarding the testimony
he would have elicited had the motion for funds to hire an expert been granted.

 In Ake v. Oklahoma, the United States Supreme Court explained that due
process requires access to the raw materials integral to the building of an effective
defense. 470 U.S. 68, 77, 105 S. Ct. 1087, 1093 (1985). The State must provide an
indigent appellant the basic tools to present a defense within the adversarial system. 
See Rey v. State, 897 S.W.2d 333, 337 (Tex. Crim. App. 1995). The principle extends
to the use of an expert when an indigent appellant establishes an expert is needed. 
Id. at 338. This does not mean, however, that the State must "purchase for an
indigent [appellant] all the assistance that his wealthier counterparts might buy." Ake,
470 U.S. at 77, 105 S. Ct. at 1093; Griffith v. State, 983 S.W.2d 282, 286 (Tex. Crim.
App. 1998). The purpose of the appointment of an expert is to level the playing field
between the State and the defendant. See Rey, 897 S.W.2d at 337. The defendant has
the initial burden to make a sufficient threshold showing that an expert's assistance
is needed and must also demonstrate that the substance of the expert's testimony is
likely to be a significant factor at trial. See id. at 339; Taylor v. State, 939 S.W.2d
148, 152 (Tex. Crim. App. 1996). We review a ruling on a motion requesting funds
for an expert for abuse of discretion. See Griffith, 983 S.W.2d at 287.

 Since Ake, the Court of Criminal Appeals has upheld the necessity that indigent
defendants be provided with access to experts in the following instances: a chemist
in a controlled substance case; a psychiatrist in a murder case in which insanity was
the only contested issue, and a pathologist in a capital murder in which the
"mechanism of death" was a significant factor. See Jackson v. State, 992 S.W.2d 469,
474 (Tex. Crim. App. 1999) (per curiam) (listing and citing McBride v. State, 838
S.W.2d 248, 252 (Tex. Crim. App. 1992)); DeFreece v. State, 848 S.W.2d 150, 160
(Tex. Crim. App. 1993); Rey v. State, 897 S.W.2d 333, 339 (Tex. Crim. App. 1995). 
As the Jackson court noted, the appellants in McBride, DeFreece, and Rey had made
the requisite preliminary showing of a significant issue of fact on which the State
would present expert testimony. Jackson, 992 S.W.2d at 474.

 In this case, however, the State was not presenting any expert testimony on the
issue of eyewitness identification. Further, appellant and his codefendant were in the
house for well over an hour. Lyons and Davis each had multiple opportunities to
observe appellant during the robbery, in both well-lit and poorly-lit situations, and
each identified him, via a videotape lineup and a photo-spread, respectively. 
Appellant was not in any way restricted from presenting his defense of
misidentification through cross-examination of Lyons and Davis regarding their
descriptions and their respective lineup and photo-spread identifications. Appellant
questioned Lyons's description of the perpetrator as having two-inch "dread locks"
and the type of shoes worn by the perpetrator. Appellant cross-examined Davis with
his never having seen appellant before the incident and questioned whether the
lighting in the house was sufficient to permit an identification. The jury was thus
allowed to hear challenges to the identifications in a clear and uncomplicated manner
that did not require expert testimony to explain their significance further.

 Moreover, an eyewitness-identification expert could not have assisted the jury
with respect to Pradia's testimony because Pradia and appellant were acquaintances
before this incident. The primary issue with regard to Pradia was whether Pradia was
credible in naming appellant as his co-defendant, not whether Pradia had
misidentified appellant because he did not know him. Appellant was allowed to
challenge Pradia's credibility by cross-examining Pradia with the State's offer for a
possible reduced sentence. Appellant also called a witness who claimed Pradia had
previously stated that someone other than appellant had committed this crime with
Pradia. Finally, appellant called an alibi witness to testify that appellant was with her
during the time of the offense, and therefore, could not have committed it.

 The record reflects, therefore, that appellant was allowed to present his defense
of misidentification to the jury and that an expert was not necessary to present or
explain this defense. Consequently, we hold that the trial court did not abuse its
discretion by overruling appellant's request for funds to hire an expert. (2)

 Appellant also contends the judge erred by excluding the testimony of his
expert witness on the issue of misidentification. Because the exclusion of expert
testimony is inherent in the judge's denial of appellant's Ake motion, we need not
address this issue.

 We overrule appellant's first and second points of error.

 The rest of the opinion does not meet the standards for publication and is
ordered not to be published. See Tex. R. App. P. 47.4. The judgment is affirmed.





RIGHT TO CROSS-EXAMINE

 In his third point of error, appellant contends the trial court erred by not
allowing appellant to cross-examine codefendant, Pradia. The following testimony
during the State's case-in-chief is pertinent to disposition of this point of error:

 State: Now, is it correct, [Pradia], that you actually went to
trial as a party to a capital murder in this case, too,
didn't you?


 Pradia: Yes.


 Defendant: I object, Your Honor, that's a mischaracterization. 
He went to trial as a primary suspect in the case,
Your Honor.


 Court: Overruled.


 State: After Mr. Davis testified, you changed your mind
about your plea, didn't you?


 Pradia: Yes.


 State: Why did you plead to capital murder in the middle
of your trial?


 Pradia: That felony murder to testify against - 


 State: Hold on. Listen to the question. What did you
plead in the middle of your trial?


 Pradia: On, to capital murder?


 State: Guilty or not guilty?


 Pradia: Guilty.


 State: You also had an agreement with the State, did you 
not?


 Pradia: Yes.


 State: What was your agreement?

 . . . . 


 State: What were the terms of your agreement with the
State regarding your testimony?


 Pradia: That capital murder will be reduced to felony murder
to testify against my co-defendant.

 . . . .


 State: Mr. Pradia, what is your understanding if you lie on
the stand, what happens then?


 Pradia: That I would be found guilty of capital murder.

On cross-examination by appellant, the following testimony occurred:

 Defendant: Okay, and you also knew that the State not only did
they want you to testify, but they wanted you to say
that [appellant] was with you that night, right?


 State: Objection to the form of the question.


 Pradia: No.


 Court: Assuming facts not in evidence, calls for 
speculation and improper form.

Appellant contends he wanted to establish Pradia's motivation in testifying against
him. Later, during appellant's cross-examination of Pradia, the following testimony
about a letter that Pradia had written to Davis and appellant came into evidence:

 Defendant: Basically, they have you dead to right [sic] in a
capital murder case, they know who you are, okay,
yet they allow you to plead guilty and they are
willing to let the Court sentence you to a lesser
offense, right?


 Pradia: Right.


 Defendant: That's after you testify in this case, right?


 Pradia: Right.


 Defendant: And despite what they may have said or didn't say to
you, you know that basically in your own mind what
they wanted is they wanted you to come in and
testify that [appellant] was with you back on
October 16, 1999?


 Pradia: No.


 Defendant: So in other words, what you are telling me is in your
mind if you would have come in here and said John
Brown was with you on that night, or Mike Smith,
or Mike Jones, that you would get the same deal?


 Pradia: No.


 Defendant: That's right, you wouldn't get the same deal, would
you? You can answer it.


 Pradia: I just answered.


 Defendant: I'm--well, because the truth of the matter is, in
order for you to get the deal that you want, you have
to come in and testify that [appellant] was with you
that night, right?


 State: Objection, assuming facts not in evidence.


 Court: You should testify---he may testify as to his opinion.


 Defendant: That's based on what he is thinking, Your Honor.


 Court: He may answer as to his belief.


 Defendant: As to your belief, right?


 Pradia: Could you ask me again?


 Defendant: Sorry, can I have the court reporter please read the
question back, Your Honor.


 Reporter: I'm--well, because the truth of the matter is, in
order for you to get the deal that you want, you have
to come in and testify that [appellant] was with you
that night, right?


 Defendant: I'm asking you whether or not that's right?


 Pradia: Right.

 The testimony excerpted above indicates that appellant was able to question
Pradia about his motive for testifying against appellant. Further, appellant was able
to elicit testimony that Pradia believed he had to testify that appellant was with him
on the night of the burglary and murders. Through appellant's continued questioning
of Pradia, appellant was able to elicit the same testimony that he argues was earlier
excluded. Thus, any error committed by the trial court was harmless. See Leday v.
State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); Womble v. State, 618 S.W.2d 59,
62 (Tex. Crim. App. 1981).

 We overrule appellant's third point of error.


IMPEACHMENT

 In his fourth point of error, appellant contends the trial court erred by not
allowing appellant to impeach Lyons with the facts of his prior convictions.

 Lyons testified that he had prior convictions for two misdemeanor thefts, one
in 1986 and another in 1994, and a felony conviction for possession of a counterfeit
driver's license. During cross-examination, appellant was allowed to question Lyons
about the sentences he received for his prior convictions. Appellant asked if Lyons
had been placed on seven-years probation in 1993 for the felony offense of
possession of a counterfeit driver's license. Lyons admitted the offense and the
sentence. Appellant then began to question Lyons about the termination of that
probation and whether there was a second felony conviction for possession of a
counterfeit driver's license. The State objected and requested that both parties 
approach the bench to discuss Lyons's terminated probation.

 Appellant argued that evidence of Lyon's terminated probation was admissible,
and the State argued it was not. The trial court asked both parties to supply case law
to consider before ruling on the issue, asked appellant to move on to a different topic,
and suggested that all the parties work on the issue during the afternoon recess. 
During the recess, the trial judge conducted a conference with the State and appellant
off the record. Appellant did not raise the issue of Lyons's terminated probation at
any other time during trial. Thus, appellant did not preserve error. See Tex. R. App.
P. 33.1(a); Turner v. State, 805 S.W.2d 423, 432 (Tex. Crim. App. 1991).

 We overrule appellant's fourth point of error.

 We affirm the judgment.


 Elsa Alcala

 Justice 


Panel consists of Justices Mirabal, Taft, and Alcala. 

 

Publish in part. Tex. R. App. P. 47.

1. Ake v. Oklahoma, 470 U.S. 68, 74, 105 S. Ct. 1087, 1091-92 (1985) (holding
that when expert testimony is a basic tool to an indigent defendant's case that
the State must provide funding for such an expert).
2. No published decisions in Texas jurisprudence have considered this issue, and
only one federal appellate court has addressed it. The Court of Appeals for the
Ninth Federal Circuit held that allowing indigent defendants the right to an
expert on eyewitness identification would create a new obligation on the State. 
Jackson v. Ylst, 921 F.2d 882, 886 (9th Cir. 1990). In previous cases, the Ninth
Circuit had concluded that cross-examination was sufficient to "alert jurors to
specific conditions that render a particular eyewitness identification
unreliable." Id. (citing United States v. Christophe, 833 F.2d 1296, 1300 (9th
Cir. 1987)).