# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00726-CR

**Christopher Eugene Wimberly, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 54,705, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Christopher Eugene Wimberly appeals from his conviction for aggravated robbery. *See* Tex. Pen. Code Ann. § 29.03(a)(2) (West 2003). After the jury found appellant guilty, the court assessed punishment and sentenced appellant to fifty years' confinement. We affirm the trial court's judgment.

### Background

***The Robbery***

At approximately 10:45 p.m. on December 23, 2002, Phillip Wynn went out the back door of a Pizza Hut in Killeen, Texas, to load pizzas for delivery to a local shopping mall. He felt a weapon in his chest and was pushed back into the store. Inside the well-lit store, he saw that the

gun was a .12-gauge pump-action shotgun. Once inside, the robber told Wynn to put down the pizzas and get on the floor, orders with which Wynn complied. Gerard Giosio, the store manager, was doing paperwork at his desk when he heard a noise; he turned and saw Wynn backing into the store with a gun to his chest. Giosio, about six feet away, asked what was going on, and the robber turned the gun on him and demanded money. Giosio walked toward the front of the store to get to the safe while the robber held the gun to Giosio's back. Wynn retreated to the walk-in cooler as soon as the robber's attention was on Giosio.

The shift manager, Ida Rodriguez, was at the front of the store counting the day's money. The safe was open and there was money on the counter. Rodriguez immediately began handing the money to the robber. After taking the money, the robber told everyone to get on the floor, which they did. Giosio looked up to see whether the robber had left; Jared Castro, another employee at the back of the store, yelled that the robber was gone.[1]

### *The Robber's Identification*

Giosio described the robber as a black man dressed in a heavy black winter coat with the hood pulled up and the drawstring tied tightly so that it "squished" his face. Despite this, Giosio said that he could see the robber's eyes, nose, cheeks and mouth. When asked about the robber's size, Giosio stated that he was about six feet tall, two hundred pounds, and in his early to mid thirties. Giosio did not get a full direct look at him but stated that the robber looked like a driver

---

[1] The record does not show any details concerning the investigation of the case and appellant's arrest. No issues concerning these events was raised.

who worked part-time for Giosio.[2]  Giosio viewed a photo lineup and was "80% certain" that appellant was the robber.  When given an initial photographic lineup, Giosio did not identify anyone as the robber.[3]  Giosio later identified appellant in another photographic lineup; he focused his attention on the eyes, the feature he noticed the most, by folding a strip of the photos out of the way.  Giosio identified appellant in court to the same 80% degree of certainty that he had about the photographic identification.

Wynn, who was in the military, was working part time delivering pizzas for extra money for Christmas.  He had been in the military for fifteen years.  Wynn unequivocally identified appellant in court as the robber.  Wynn said that the store was well-lit and he was paying close attention to the robber's eyes and face.  He was 100% certain of the identification because it "seemed like he was looking at him for eternity."  Wynn said that the robber was a few inches taller and heavier than he.  When asked to identify appellant in a photo lineup, Wynn eliminated three pictures right away; then used his hands to frame the part of the face that he saw and identified appellant.

Two other employees testified.  Thomas Bales, Giosio's stepson, testified that he did not see the robber that well because he was focused on the gun and was not 100% sure either way.  Jared Castro also said he could not identify the robber because he was looking at the gun, not the robber's face.[4]

---

[2]  The driver that the robber resembled was out of state at the time of the robbery.

[3]  Appellant's photograph was not in the initial lineup.

[4]  The robber wore gloves; there were no fingerprints or other identifying evidence left at the scene.

**Discussion**

Appellant brings two issues on appeal: (1) the evidence is factually insufficient to support the conviction[5]; and (2) appellant received ineffective assistance of counsel. Although there is no right to hybrid representation, *see Scheanette v. State*, 144 S.W.3d 503, 505 n.2 (Tex. Crim. App. 2004), this Court granted leave for appellant to file a supplemental brief. *See Green v. State*, 137 S.W.3d 356, 365 (Tex. App.—Austin 2004, pet. ref'd) (appellant's pro se brief considered in the interests of justice).

*Factual Sufficiency*

To determine factual sufficiency, we view the evidence in a neutral light, not in the light most favorable to the prosecution. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The question to be answered is whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). The evidence supporting the verdict, when considered by itself, may be too weak to support the finding of guilt beyond a reasonable doubt. *Id*. In the alternative, there may be both evidence supporting the verdict and evidence contrary to the verdict. Weighing all evidence, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Id*. at 484-85. In other words, evidence of guilt can "preponderate" in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. *Id.* However, a factual sufficiency review must be appropriately deferential to avoid substituting our judgment for that of the jury.

---

[5] A challenge to factual sufficiency begins with the assumption that the evidence is legally sufficient. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).

*Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Unless the available record clearly indicates a different result is appropriate, an appellate court must defer to the jury's determination concerning what weight to give to contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor. *Johnson*, 23 S.W.3d at 8. We are not free to reweigh the evidence, but must exercise our jurisdiction only to prevent a manifestly unjust result. *Id.*

Appellant relies on *Ward v. State* to support his contention that the eyewitness's testimony is insufficient. *See* 48 S.W.3d 383, 391 (Tex. App.—Waco 2001, pet. ref'd). *Ward*, however, is distinguishable. In *Ward*, three eyewitnesses identified Ward as the robber: one with a 3-second view, one with a 15-20 second view, and one on strong medication. *Id.* at 385-86. Another witness identified a different person by name as the robber. *Id.* at 385. That witness had gone to high school with both Ward and the man he saw running away, and called the police upon news of Ward's arrest to tell them that they had the wrong person. *Id.* Ward's time card and four eyewitness at his workplace put him at work during the robbery. *Id.* at 386-87. The majority opinion found the evidence factually insufficient.[6] *Id.* at 391.

We have no such countervailing evidence in this case. Instead, appellant challenged the credibility of the eyewitnesses' identification and placed a heavy emphasis on the fact that two witnesses at the scene did not identify him. However, neither did they identify anyone else or say that appellant did not look like the robber—they were too focused on the gun to pay attention to the

---

[6] The dissent noted that "[e]vidence with some element of untrustworthiness is customary grist for the jury's mill." *Ward v. State*, 48 S.W.3d 383, 395 (Tex. App.—Waco 2004, pet. ref'd). The dissent considered that the majority had improperly weighed the credibility of the witnesses "based on factors that are not apparent in the record[,]" and would have held the evidence factually sufficient. *Id.*

5

robber. Although appellant attempted to cast doubt on the accuracy of the witnesses' identifications with evidence that the witnesses used maneuvers to narrow their frame of reference when viewing the photographic lineup, there is no claim that the arrays themselves were impermissibly suggestive or tainted the in-court identification.

Appellant also focuses on Giosio's "80% sure" answer as indicating that the eyewitness identification was uncertain. Giosio's qualification of his identification, however, could have rationally been interpreted by the jury as the caution of a person bending over backwards to acknowledge that he had a small amount of doubt and was allowing for that doubt. Eyewitness Wynn, who testified that he looked at the robber's face, not the gun, was completely certain in his identification. The jury could have given his identification high credibility because of that testimony that he focused on the robber's face. The testimony of a single eyewitness is sufficient to support a felony conviction. *See Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982); *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *see also Johnson v. State*, No. 01-03-00319-CR, 2004 Tex. App. LEXIS 5939, at *9 (Tex. App.—Houston [1st Dist.] July 1, 2004, pet. ref'd) (designated for publication). We do not conclude that the State's proof of guilt was so obviously weak as to undermine confidence in the jury's determination or that the finding of guilt was against the great weight and preponderance of the evidence. *See Johnson*, 23 S.W.3d at 11. We overrule appellant's first issue.

***Ineffective Assistance***

In his second point of error, appellant contends that he received ineffective assistance of counsel. Specifically, he contends that trial counsel should have sought and obtained an expert

6

witness on eyewitness identification and should have conducted an independent investigation of the case.

The Sixth Amendment to the United States Constitution guarantees the right to the reasonably effective assistance of counsel in a state criminal proceeding. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). To show ineffective assistance of counsel, a convicted defendant must show that his trial counsel's performance was deficient, in that counsel made such serious errors he was not functioning effectively as counsel; and the deficient performance prejudiced the defense to such a degree that the defendant was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting *Strickland*). Prejudice is demonstrated when the convicted defendant shows "a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Banks v. State*, 819 S.W.2d 676, 681 (Tex. App.—San Antonio 1991, pet. ref'd). Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the results unreliable. *Strickland*, 466 U.S. at 687; *Oestrick v. State*, 939 S.W.2d 232, 237 (Tex. App.—Austin 1997, pet. ref'd).

Under *Strickland*, a defendant has the burden to prove a claim of ineffective assistance of counsel by a preponderance of the evidence. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996); *Parmer v. State*, 38 S.W.3d 661, 665 (Tex. App.—Austin pet. ref'd). Whether the *Strickland* test has been met is judged by the totality of the representation rather than by isolated acts or omissions of trial counsel, and the test is applied at the time of the trial, not

7

through hindsight. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990); *Banks*, 819 S.W.2d at 681. Judicial review of a defendant's claim of ineffective assistance must be highly deferential to trial counsel. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. 689; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813; *Josey v. State*, 97 S.W.3d 687, 696 (Tex. App.—Texarkana 2003, no pet.). In the absence of direct evidence in the record of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can be imagined. *Garcia*, 57 S.W.3d at 441. The challenged conduct will not, under the circumstances, constitute deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *See Garcia*, 57 S.W.3d at 441; *Thompson*, 9 S.W.3d at 814.

The court held a hearing on a motion for new trial. Trial counsel testified that the State's attorney provided complete discovery. There were no plea offers made in this case.[7] Counsel questioned appellant about the existence of an alibi; appellant had none, so there were no witnesses he could interview to attempt to place appellant elsewhere. Appellant was not employed, so there was no employer available for an alibi or to serve as a character witness. Trial counsel noted that the witnesses' statements were detailed and consistent with each other. At trial, counsel vigorously

---

[7] Appellant had other pending criminal matters in the same county but was represented by other counsel for those matters.

cross-examined the witnesses. He developed information about the method by which the photo identifications were made and tried to cast doubt on the reliability of the identifications. He argued to the jury that appellant was a significantly bigger man than the robber described by the witnesses. He had appellant stand up to demonstrate his size to the jury. Further, he did not object to the introduction of a sample shotgun because he wanted to, and did, argue that having a shotgun pointed at the witnesses would have so shocked and terrified them that their identifications would be inaccurate because of that shock.

Appellant argues that counsel failed to make an adequate independent investigation of the case. However, the record fails to establish affirmatively any material evidence that was missing from the case that might have affected the outcome. Appellant complains, for example, that counsel failed to seek out other potential eyewitnesses. Yet the record fails to establish even the possible existence of any "missing" witnesses, much less any whose testimony would benefit appellant. Trial counsel focused on the witnesses who testified, who were mixed in whether they could identify the robber. The jury chose to believe the unequivocal testimony of one eyewitness—Wynn, the one with the shotgun to his chest—and the "80% sure" witness identification. However, trial counsel raised significant questions concerning identity to the jury, including a visual demonstration to illustrate that the witnesses described a man potentially smaller than appellant.

Appellant complains that an expert witness on the problems of eyewitness testimony should have been called. However, the record from the motion for new trial shows that trial counsel was never questioned about why he did not attempt to use such an expert. Accordingly, the record cannot show that trial counsel's decision not to use an expert was not a strategic choice. Counsel

9

may have decided that reasonable doubt could be created through cross-examination. *See Garcia*, 57 S.W.3d at 441 (in absence of direct evidence in record of counsel's reasons for challenged conduct, appellate court will assume strategic motivation if any can be imagined). Failure to request the appointment of an expert witness is not ineffective assistance of counsel in the absence of showing that the expert would have testified in a manner that benefitted defendant. *See Cate v. State*, 124 S.W.3d 922, 927 (Tex. App.—Amarillo 2004, pet. ref'd); *Parmer v. State*, 38 S.W.3d 661, 668 (Tex. App.—Austin 2000, pet. ref'd).

Further, appellant was represented by appointed counsel, creating an inference that appellant would have had to ask the court for funds to pay an expert. Counsel may have concluded there was a low possibility that the court would have paid for an expert. The State was not presenting any expert testimony on identification that the defense would need to counter with its own expert. *See Deason v. State*, 84 S.W.3d 793, 796-97 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (whether State would use expert on significant fact issue a factor in whether court should authorize payment for expert for defense). The *Deason* court noted that appellant was not restricted in any way from presenting his defense of misidentification through cross-examination of the eyewitnesses: "The jury was thus allowed to hear challenges to the identifications in a clear and uncomplicated manner that did not require expert testimony to explain their significance further." *Id*. at 797. The court found no abuse of discretion in the trial court's refusal to appoint an expert because the defendant was "allowed to present his defense of misidentification to the jury and that an expert was not necessary to present or explain this defense." *Id*. The record in this case is insufficient to discern whether counsel's failure to use an expert witness was the product of

10

reasonable trial strategy. *See Josey*, 97 S.W.3d at 696-97. Accordingly, we conclude that appellant's failure to use such an expert was not an act of ineffectiveness. *See Thompson*, 9 S.W.3d at 813.

Viewing the totality of the representation with the deference extended to trial counsel, we cannot conclude that counsel's conduct fell outside the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. 689; *Jackson*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Accordingly, we overrule appellant's second issue.

### *Supplemental Brief*

In his supplemental pro se brief, appellant complains that his counsel should raise all non-frivolous claims that he, the client, urges. However, the issues he raises—false identification and failure to investigate—were raised in the context of appellate counsel's ineffective assistance issue. Appellant seems to misapprehend somewhat the nature of an appeal. The appeal is not a re-trial of the case at which evidence is developed; i.e., he complains that appellate counsel did not seek out an expert on identification testimony. He offers no issues other than those raised and briefed by counsel. We overrule the issues presented in appellant's supplemental brief.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   October 13, 2005

Do Not Publish

11