Opinion issued December 14, 2006

 












In The

Court of Appeals

For The

First District of Texas






NO. 01-05-01019-CR

 





MARTIN RAY PERALES, Appellantv.

THE STATE OF TEXAS, Appellee






On Appeal from the 337th District Court

Harris County, Texas

Trial Court Cause No. 1017094









O P I N I O N


 Pursuant to Texas Rule of Appellate Procedure 50, we have reconsidered our
previous opinion on the filing of appellant's petition for discretionary review, which
was filed in this Court on November 30, 2006. See Tex. R. App. P. 50. We withdraw
our opinion and judgment dated November 2, 2006 and substitute the following
opinion and judgment in their place. See id.

 A jury convicted appellant, Martin Ray Perales, of indecency with a child, and
the trial court assessed punishment at two years in prison. See Tex. Pen. Code Ann.
§ 21.11 (Vernon 2003). We determine whether the evidence was factually sufficient
to show that appellant was guilty of indecency with a child and whether the trial court
erred in refusing to grant funds to appellant for the purpose of hiring an expert
witness. We affirm.Facts Because this case involves a challenge to the factual sufficiency of the
evidence, all relevant facts are set out herein.

 April Ybarra married appellant in 1996, and they had two children, L.P. and
B.P. April and appellant divorced in 2001. After the divorce, April retained custody
of the children, and appellant was allowed visitation on alternate weekends. April
married Adam Ybarra in 2002. April, Adam, L.P., B.P., and Robert Nieto, April's
grandfather, all resided in an apartment in Pasadena, Texas. L.P. and B.P. referred
to Adam Ybarra as "Dad" or "Daddy" and to appellant as their "other father." Adam
and April had spoken about Adam's adopting the girls, but in order for him to adopt
them, appellant would have had to terminate his parental rights voluntarily, which he
was unwilling to do.

 In January of 2005, L.P., who was seven, and B.P., who was five, returned
home from a visit with appellant, and L.P. began shaking and crying. L.P. told her
mother nothing was wrong and eventually calmed down and went to bed. The next
evening, when April was at a nighttime college class, L.P. approached Adam and told
him that appellant had touched her on her chest and genitals. Adam called April, and
she left class and returned home. April then questioned L.P. and B.P. about the
incident with appellant. L.P. repeated to April what she had told Adam; B.P. did not
say anything. L.P. also said that appellant had told her not to tell, but appellant later
denied that allegation. Soon afterward, L.P. began to be afraid to go to the bathroom
alone, she started having nightmares and trouble sleeping, and she was anxious.

 The day after L.P. had told April and Adam that appellant had touched her,
April and Adam contacted the police. They were instructed to file a report with Child
Protective Services ("CPS"), which they did. Afterwards, a forensic interviewer
affiliated with CPS interviewed L.P. alone. Police officers then spoke with L.P.,
April, and Adam. On March 2, 2005, L.P., April, and Adam visited psychotherapist
Jennifer Pinotti-Sanders to have L.P. evaluated and treated for nightmares and
anxiety. L.P. slept through most of the 45-minute session because she was ill with
a cold. Thus, Pinotti-Sanders obtained most of her information about L.P.'s
allegation and symptoms from April and Adam. Based on that information, Pinotti-Sanders diagnosed L.P. with post-traumatic stress disorder. After the initial
evaluation, L.P. had one other appointment with Pinotti-Sanders. Additionally, L.P.
saw a psychiatrist, Dr. Daniel Koppersmith, who corroborated Pinotti-Sanders's
diagnosis and prescribed medicine to help L.P. sleep. L.P. had two visits with
Koppersmith.

 Meanwhile, police contacted appellant and asked him to come to the police
station to discuss the allegation of sexual abuse. The precise reason for the meeting
was not discussed on the telephone. Appellant went to the police station voluntarily
and spoke with police in an effort to resolve the case. When he arrived, appellant
found out for the first time that L.P. had claimed that he had touched her
inappropriately. Police conducted two separate interviews with appellant. During the
first interview, Detective Tim Brinson interviewed appellant for about 45 minutes. 
During the second interview, Officer Jerry Wright and Detective Brinson both spoke
to appellant for approximately two and one half hours. At the beginning of the
meetings with police, appellant vehemently denied that he had touched L.P. After a
while, he admitted that he and L.P. had been playing on the bed, that she had begun
to fall, and that he had "used [his] hand to catch her and held her vagina." After
continued questioning, appellant finally stated that he had touched L.P. and that he
knew that it was wrong. 

 L.P. was questioned about the sexual abuse by at least five different persons
on separate occasions, and certain details of her story were inconsistent. At different
times, L.P. said that she was at home, that she was at the house of a "Grandma Alice,"
that she and appellant had been playing, or that she had been reading a book. 
However, L.P. maintained every time that it was appellant who had touched her on
her chest and genitals. 

Factual Sufficiency

 We address appellant's second point of error first. In his second point of error,
appellant claims that the evidence was factually insufficient to prove indecency with
a child, specifically, that the jury could not infer intent from the evidence offered. 

A. The Standard of Review

 When conducting a factual-sufficiency review, we view all of the evidence in
a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex Crim. App. 1997). We will
set the verdict aside only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). Under the first prong of Johnson, we cannot conclude that a conviction is
"clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury. Watson v. State, 
204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second prong of Johnson,
we cannot declare that a conflict in the evidence justifies a new trial simply because
we disagree with the jury's resolution of that conflict. Id. Before finding that
evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury's verdict. Id. In
conducting a factual-sufficiency review, we must also discuss the evidence that,
according to the appellant, most undermines the jury's verdict. Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

 We may not re-weigh the evidence and substitute our judgment for that of the
fact-finder. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The
fact-finder alone determines what weight to place on contradictory testimonial
evidence because that determination depends on the fact-finder's evaluation of
credibility and demeanor. Cain, 958 S.W.2d at 408-09. As the determiner of the
credibility of the witnesses, the fact-finder may choose to believe all, some, or none
of the testimony presented. Id. at 407 n.5.

B. The Law

 A person commits indecency with a child if that person has sexual contact with
a child younger than 17 who is not that person's spouse. Tex. Pen. Code Ann. §
21.11(a)(1) (Vernon 2003). Sexual contact means any touching, including touching
through clothing, of the anus, breast, or any part of the genitals of the child, if the act
is committed with the intent to arouse or to gratify the sexual desire of any person. 
Id. § 21.11(c)(1) (Vernon 2003). Intent to arouse or to gratify the sexual desire of any
person can be inferred from the defendant's conduct, his remarks, and all surrounding
circumstances. McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981). 

C. Inference of Intent

 Appellant argues that the evidence does not show that he intended to arouse or
to gratify anyone's sexual desire because one cannot infer intent from appellant's
statement to police. However, such intent may be inferred from the defendant's
conduct, his remarks, and all surrounding circumstances. See id.

 The jury could have inferred intent from appellant's statements to the police. 
When appellant began talking to police, he denied ever having touched L.P. at all. 
Gradually, the denials grew weaker, and he offered an explanation: he and L.P. had
been playing, she started to fall, and he had caught her and held her vagina. After
continued questioning, he stated that he had touched her and knew it was wrong. 
Appellant was concerned that he could "go to jail for it"; he agreed that thinking
sexual thoughts about his daughter and having sexual contact with her was wrong. 
He admitted that he had started to get an erection as he held her vagina, but realized
that it was wrong and stopped. When detectives asked appellant what he would say
to L.P. if she were there, appellant expressed a desire to tell L.P. that he was sorry,
that he loved her, and that the inappropriate touching would never happen again.

 The jury could also have inferred intent from the surrounding circumstances. 
L.P. testified that she had told appellant to stop touching her, although appellant told
the police that L.P. had not said anything. L.P. also testified that appellant had told
her not to tell, although he denied it.

 Appellant attempts to distinguish this case from others in which intent could
be more easily inferred from unusual or lascivious behavior, such as when a stranger,
instead of a parent or caregiver, touches a child's genitals. However, the jury was the
judge of the weight of the evidence and of the credibility of the witnesses. See Cain,
958 S.W.2d at 407. A rational jury could have found beyond a reasonable doubt that
appellant touched L.P. with the intent to arouse or to gratify his sexual desire, based
on appellant's conduct, remarks, and the surrounding circumstances. Simply because
cases exist in which more extreme conduct occurred--that is, in which intent to
arouse or to gratify sexual desire could be more easily inferred--does not mean that
a jury could not have inferred intent from the facts of this case.

 We overrule appellant's second point of error.

Denial of Request for Expert-Witness Funds

 In his first point of error, appellant contends that he was harmed by the trial
court's denial of funds for an expert witness. 

 Appellant did not request, and the court did not appoint, counsel for appellant
before or during trial. (1) Two days before trial began, retained defense counsel filed
a written request for expert-witness funds. The request alleged that appellant could
not afford to hire an expert because he had exhausted his available funds and property
in the prosecution of his defense. However, the motion was unverified, and no
affidavit or other evidence in support of indigency status was attached. The trial
court denied the motion the morning of trial, but the reporter's record contains no
transcription of that ruling or hearing, and whatever transpired that morning
concerning appellant's motion does not appear to have been recorded. It is thus
unknown whether a hearing on the motion took place or, if so, whether any evidence
was presented in support of it. (2) 

 We review a trial court's ruling on an indigent defendant's motion requesting
expert-witness funds (or the appointment of an expert witness) for abuse of
discretion. See Deason v. State, 84 S.W.3d 793, 796 (Tex. App.--Houston [1st Dist.]
2002, pet. ref'd) (citing Griffith v. State, 983 S.W.2d 282, 287 (Tex. Crim. App.
1998)). An indigent defendant has the right to have an expert appointed upon a
preliminary showing that the matters that the expert will address will likely be
significant factors at trial. Rey v. State, 897 S.W.2d 333, 339 (Tex. Crim. App. 1995)
(citing Ake v. Oklahoma, 470 U.S. 68, 74, 82-83, 86, 105 S. Ct. 1087, 1091-92,
1097-98 (1985)). However, a defendant must actually be indigent to be provided
State funds for, or to have appointed, such an expert. See, e.g., Ake, 470 U.S. passim,
105 S. Ct. passim (indicating that rule established by Court applied to indigent
defendants); Hebert v. State, No. 01-95-00599-CR, 1997 WL 149521, at *1 (Tex.
App.--Houston [1st Dist.] Mar. 20, 1997, no pet.) (not designated for publication)
(in overruling challenge to denial of Ake motion for lack of proof of indigency,
indicating that "[a]lthough appointment of an expert to assist an indigent defendant
is permitted, it is axiomatic that the defendant must be indigent.") (emphasis in
original); see also Tex. Code Crim. Proc. Ann. art. 26.05(d) (Vernon Supp. 2006)
(providing for reimbursement of appointed defense counsel's necessary expenses,
including expenses for experts); Green v. State, 682 S.W.2d 271, 291 (Tex. Crim.
App. 1984) (in overruling challenge to denial of motion to appoint expert witness,
reasoning that "[article] 26.05 provides that court appointed attorneys may be paid
for certain expenses. No evidence of indigency was presented other than the
appellant's unsupported allegations.") (emphasis added). If a defendant is not
indigent, then Ake does not apply. 

 It is the defendant's burden to show indigency if, as here, indigency has not
already been declared by the court. See Hebert, 1997 WL 149521, at *1 (holding
same, in review of denial of Ake motion) (3); cf. Ex parte Briggs, 187 S.W.3d 458, 468
(Tex. Crim. App. 2005) (in case involving ineffectiveness of retained counsel for
failure to protect client's interests when client ran out of funds, indicating that
counsel was deficient for, among other things, not having sought appointment of Ake
expert after having proved up client's indigency status); Atwood v. State, 120 S.W.3d
892, 896 (Tex. App.--Texarkana 2003, no pet.) (indicating that defendant has burden
to demonstrate indigency before court has duty to appoint counsel). To show
indigency, an appellant must present more than simply an unverified allegation that
his financial situation has changed. See Tex. Code Crim. Proc. Ann. art. 26.04(m)
(Vernon Supp. 2006) (providing that, in determining whether defendant is indigent
for purposes of appointment of counsel, court may consider defendant's income,
source of income, assets, property owned, outstanding obligations, necessary
expenses, number and age of dependants, and spousal income); Hebert, 1997 WL
149521, at *1 (holding same, in review of denial of Ake motion); see also Ex parte
Briggs, 187 S.W.3d at 468 (indicating in dictum that "the trial court undoubtedly
would have permitted state-funded appointment of expert assistance under Ake had
applicant's attorney put on proof of his client's present indigency.") (emphasis
added).

 Appellant presented no evidence in support of his unverified allegation of
indigency, and he had not previously been declared indigent. We hold that the trial
court did not abuse its discretion in denying appellant's Ake motion when that motion
failed to make a preliminary showing of indigency.

 We overrule appellant's first point of error.

Conclusion

 We affirm the judgment of the trial court.

 


 Tim Taft

 Justice


Panel consists of Justices Taft, Keyes, and Hanks.


Publish. See Tex. R. App. P. 47.2(b).

1. Counsel was first appointed for appellant at the time of the filing of his notice
of appeal.
2. We note that appellant does not complain on appeal of the lack of a hearing on
his motion or of the lack of a record of any such hearing.
3. The Hebert opinion is the only Texas authority that we have located that makes
express holdings concerning the burden to show, and the proof required for
showing, the preliminary matter of indigency in an Ake motion. We thus adopt
the reasoning and holding of the Hebert Court on the Ake issue.