

# IN THE
# TENTH COURT OF APPEALS

### No. 10-11-00260-CR

**GARY HOWARD FULTON,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 66th District Court
### Hill County, Texas
### Trial Court No. 36394

## MEMORANDUM  OPINION

The jury convicted Gary Howard Fulton of the offense of driving while intoxicated, third offense or more, and assessed punishment at 50 years confinement and a $10,000 fine.  We affirm.

Fulton does not challenge the sufficiency of the evidence to support his conviction.  In his first issue, he argues that the trial court erred by "allowing the trial to take place without knowing if [Fulton] was competent to stand trial."  In the second

issue, Fulton complains that the trial court erred in denying his request for the appointment of an expert to determine his competency to stand trial.

Prior to trial, the trial court appointed a licensed psychologist to evaluate Fulton's competency to stand trial and his sanity at the time of the offense. Dr. Verl Childers evaluated Fulton and found:

> Based upon available historical information, test results, and interview data, Mr. Fulton has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding. Has a rational and factual understanding of the proceedings pending against him. It is my opinion that he is competent to stand trial on the charges pending.

Dr. Childers further found that Fulton was sane at the time of the offense.

During trial, Fulton interrupted the trial proceedings by speaking out to the trial court. Fulton first objected to the video taken at the time of his stop for driving while intoxicated. The State and Fulton's attorneys agreed to mute the portion of the video stating that Fulton was on parole. Fulton wanted the entire video and audio played for the jury. Fulton's attorneys would not agree to play the entire audio portion of the video. After discussions with his attorneys and the trial court, Fulton agreed to mute the audio portion of the video stating that he was on parole. Fulton also objected that his attorneys were not asking the "questions that need to be asked." Fulton became upset that witnesses were testifying outside the presence of the jury while the trial court determined the admissibility of the testimony.

The trial court admonished Fulton on his right not to testify. Fulton stated that he can read and write, but that he is "very slow." Fulton stated that he is on medication for blood pressure and that he uses an inhaler. He also stated that he is taking

antibiotics and a decongestant for a sinus infection. Fulton also said that he had received psychiatric treatment prior to being arrested. Fulton explained to the trial court that he wished to testify because his attorneys were not presenting evidence to the jury that someone else was driving the vehicle. Fulton decided against testifying at trial.

On the third day of trial after both sides had rested and closed, Fulton informed the trial court that he changed his mind about testifying. Fulton stated that "… I have a change of heart about not testifying. I want to testify. I want the - - I think it would be very important that the jury know the facts of this case, which my attorneys have not presented …" As the trial court prepared to read the charge to the jury, Fulton interrupted and asked the court if he would be able to testify. After repeated interruptions by Fulton, the trial court had him removed from the courtroom. Fulton was able to observe the proceedings on a monitor in another room. After the jury reached a verdict, the trial court informed Fulton he could return to the courtroom, but Fulton stated that he would prefer to view the verdict on the monitor.

At the punishment phase of the trial, the trial court again informed Fulton that he could return to the courtroom for the proceedings, but that he must comply with the rules of courtroom decorum. Trial counsel stated that he instructed Fulton that it was in his best legal interest to stay in the courtroom. Fulton stated "I'm mentally challenged at this time and I'm tired."

Fulton contends that although he had been found competent to stand trial, the trial court should have conducted another inquiry into his competency after his erratic

behavior at trial. A person is incompetent to stand trial if the person does not have sufficient present ability to consult with counsel with a reasonable degree of rational understanding; or a rational as well as factual understanding of the proceedings against him. TEX. CODE CRIM. PRO. ANN. art. 46B.003 (West 2006). Either party may suggest by motion, or the trial court may suggest on its own motion, that the defendant may be incompetent to stand trial. TEX. CODE CRIM. PRO. ANN. art. 46B.004 (a) (West Supp. 2011)[1]. If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial. TEX. CODE CRIM. PRO. ANN. art. 46B.004 (b) (West Supp. 2011). On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial. TEX. CODE CRIM. PRO. ANN. art. 46B.004 (c) (West Supp. 2011).

An inquiry into competency must be conducted when there is evidence sufficient to raise a bona fide doubt in the mind of the judge whether the defendant is legally competent. *Gonzales v. State*, 313 S.W.3d 840, 842 (Tex. Crim. App. 2010), *cert. den'd* –U.S.--, 131 S.Ct. 928, 178 L.Ed.2d 768 (2011). A bona fide doubt may exist if the defendant exhibits truly bizarre behavior or has a recent history of severe mental illness or at least moderate mental retardation. *Id*. We review a trial court's failure to conduct

---

[1] TEX. CODE CRIM. PRO. ANN. art. 46B.004 was amended effective September 1, 2011. The changes apply only to proceedings conducted after September 1, 2011. Because Fulton was tried in June 2011, the new provisions are not applicable in this case.

a competency inquiry under an abuse of discretion standard. *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App.1999).

The record shows that Fulton disagreed with his attorney's trial strategy and that he has a history of disagreeing with his counsel. Fulton asked for his previous counsel to be removed, and the trial court appointed new counsel to represent Fulton. At trial, Fulton repeatedly interrupted the proceedings to express his displeasure with his trial counsel's representation. However, vocal disagreement with trial counsel does not show that Fulton was incompetent to stand trial.

Fulton does not have a history of severe mental illness, and we do not find his behavior to be truly bizarre. The trial court did not abuse its discretion in failing to conduct a second inquiry into Fulton's competency. We overrule the first issue.

Fulton argues that he was denied an expert to evaluate him for competency during the trial and was again "denied an expert post-proceedings" to evaluate his medical records to give insight into his competency at the time of trial. We review a ruling on a request for the appointment of an expert for abuse of discretion. *See Deason v. State*, 84 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). In *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the United States Supreme Court explained that due process requires access to the raw materials integral to the building of an effective defense. *Griffith v. State*, 983 S.W.2d 282, 286 (Tex. Crim. App. 1998). In other words, the State must provide a defendant with the basic tools to present his defense within our adversarial system. *Id.* In implementing this right to

receive an expert, the burden is on the defendant to make a sufficient threshold showing of the need for the expert's assistance. *Griffith v. State*, 983 S.W.2d at 286-7.

Fulton was examined prior to trial and determined to be competent to stand trial. Fulton's interruptions during trial did not require the trial court to appoint a second expert to evaluate him. In his motion for new trial, Fulton presented the affidavit of a nurse from the jail that just prior to trial, he was given a new medication after complaining of a cold and a headache. Fulton was prescribed an antibiotic and an antihistamine. The nurse stated that the common side effects of the antihistamine are "dizziness and drowsiness. She further stated that other side effects include "poor coordination, fatigue, anxiety, euphoria, confusion, and parasthesia, neuritis." The nurse further stated that during the time she dealt with Fulton, she did not observe any changes in his behavior and that he was rational and coherent during June, the month in which he was tried. Fulton has not shown that the trial court abused its discretion in refusing to appoint an expert to evaluate him for competency. We overrule the second issue.

The judgment of the trial court is affirmed.


AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed June 27, 2012
Do not publish
[CRPM]