**Bobby Lee STRATTON, Appellant,**

v.

**MISSOURI DEPARTMENT OF CORRECTIONS AND HUMAN RESOURCES, Respondent.**

No. WD 49749.

Missouri Court of Appeals,
Western District.

Feb. 7, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 28, 1995.

Application to Transfer Denied
May 30, 1995.

Philip E. Prewitt, Jefferson City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. McAdams, Asst. Atty. Gen., Jefferson City, for respondent.

Before FENNER, C.J., and KENNEDY and BERREY, JJ.

FENNER, Chief Judge.

Bobby Lee Stratton appeals from the order of the trial court granting summary judgment in favor of the Missouri Department of Corrections and Human Resources in a handicap discrimination action.

Stratton is a 40–year–old male who is missing four fingers on his right hand. He was previously employed by the Department of Corrections as a corrections officer at the Jefferson City Correctional Center from August 1986 until he resigned in February 1988. In September 1988, Stratton re-applied for a corrections officer position with the Department as a new employee. He was given a test and ranked on a register of individuals eligible for employment.[1]

As part of the centralized hiring process, applicants are interviewed and given a medical examination and a physical endurance test. Applicants who do not pass the medical screening are not permitted to engage in the physical endurance testing. Between the

---

1. Applicants were tested and ranked by the Office of Administration, Division of Personnel. This Division is not part of the Department of Corrections. When additional officers are needed, the Department obtains applicants from the register of eligible individuals.

time of Stratton's initial hiring in 1986 and his subsequent application in 1988, the Department increased the standard performance level expected of corrections officers. Specifically, the Department refined its medical testing for pre-employment screening, adopted a full and adequate use of limbs policy and increased the physical fitness requirements. The pre-employment medical screening allowed the examining physician to conduct a general health evaluation and determine which applicants had conditions that would prevent them from being able to adequately perform the duties of a corrections officer.

The Department hired Dr. Kenneth Schafermeyer to conduct the pre-employment screening of applicants and apply the free and adequate use of limbs policy. As implemented by Dr. Schafermeyer, the free and adequate use of limbs policy allowed individuals missing one finger to be eligible for employment. Individuals missing two or three fingers may or may not have been eligible for employment depending on other factors, i.e., how well the other fingers functioned. Individuals missing four fingers on any one hand, however, were ineligible for corrections officer positions.

On September 15, 1988, Dr. Schafermeyer conducted an examination of Stratton to determine whether he was physically fit for the appointment as a Corrections Officer I. After conducting the examination, Dr. Schafermeyer determined that Stratton could not perform the role of a corrections officer and was therefore not eligible for hire as a Corrections Officer I. In his deposition testimony, Dr. Schafermeyer indicated that he had determined that Stratton would be unable to perform some of the required defensive tactics, i.e., the reverse wrist, because he was missing four fingers on his right hand. Dr. Schafermeyer also noted that Stratton needed treatment for high blood pressure and that he was overweight. (He is 5 feet 7 inches tall and weighed 295 pounds). Stratton did not pass the medical screening and

was not permitted to engage in the physical endurance testing.

Applicants who are selected for corrections officer positions are sent to the Department's Central Training Academy for training on the various skills that are required of corrections officers. These skills include first aid techniques, use of firearms, custody and transportation, and defensive tactics. The applicants are tested on their ability to successfully perform these skills. Applicants who are unable to meet performance standards are subject to dismissal and are ineligible to be corrections officers. In December 1993, Stratton took the defensive tactics test as part of a videotaped deposition but was unable to successfully perform most of the defensive tactics required by the Department. He has not requested any accommodation for his physical condition and denies that any accommodation is necessary.

On November 14, 1988, Stratton filed a complaint with the Missouri Commission on Human Rights alleging employment discrimination based on a "handicap" of four missing fingers. In March 1990, the Commission issued its finding that probable cause existed to support Stratton's claim. Stratton subsequently filed a petition with the Circuit Court of Cole County alleging that the Department had engaged in unlawful and discriminatory employment practice in violation of section 213.055, RSMo 1986,[2] by refusing to hire him solely on the basis that he was missing four fingers on his right hand. Both parties submitted motions for summary judgment. The circuit court granted the Department's motion for summary judgment and denied Stratton's motion. Stratton appeals.

Stratton presents three points on appeal, the first of which is dispositive. In that point, Stratton contends that the trial court erred in granting the Department's motion for summary judgment because there is a genuine issue of material fact as to whether he was capable of performing the essential duties of a Corrections Officer I.

---

2. Section 213.055.1(1) provides, in pertinent part, that

"[i]t shall be an unlawful employment practice ... for an employer, to fail or refuse to hire or to discharge an individual ... because of such individual's ... handicap."

"Summary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Daffron v. McDonnell Douglas Corp.*, 874 S.W.2d 482, 483 (Mo.App.1994). In considering an appeal from a summary judgment, this court's review is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is reviewed in the light most favorable to the party against whom the judgment was entered. *Id*. The "[f]acts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id*.

A movant's right to summary judgment differs significantly depending upon whether the movant is a "claimant" or a "defending party." *Id*. at 381. When the movant is the "defending party," it is not necessary to controvert each element of the non-movant's claim in order to establish a right to summary judgment. *Id*. The movant may establish a right to summary judgment by showing (1) facts that negate any one of the claimant's elements; (2) that the non-movant has failed to present evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support a properly-pleaded affirmative defense. *Id*. Once the movant has established a right to judgment as a matter of law, the non-movant must show that there is a genuine dispute as to a material fact. *Id*.

In order to establish a prima facie case of discrimination based on a handicap, the plaintiff must show (1) that he is statutorily "handicapped"; (2) that the defendant failed to hire plaintiff; and (3) that plaintiff's handicap was a factor in the decision not to hire him. *City of Clayton v. Missouri Comm'n on Human Rights*, 821 S.W.2d 521, 527 (Mo.App.1991).

Section 213.010(10), RSMo Supp.1993 defines "handicap" as:

[A] physical or mental impairment which substantially limits one or more of a person's major life activities, a condition perceived as such, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job....

The plaintiff has the burden of establishing that he is handicapped within the meaning of the statute. *Welshans v. Boatmen's Bancshares*, 872 S.W.2d 489, 493 (Mo. App.1994). "A person is not statutorily handicapped if the impairment interferes with performance of the job unless the person can perform the job with reasonable accommodation." *Id*. The question of reasonable accommodation is part of the test in determining whether a person is statutorily handicapped. *Umphries v. Jones*, 804 S.W.2d 38, 41 (Mo.App.1991).

Stratton claims that he is "handicapped" under the statute because he could have performed the essential functions of a Corrections Officer I without any accommodation for his missing fingers. In support of this contention, Stratton points out that he was able to adequately perform his job when he was previously employed with the Department and asserts that the defensive tactics required by the Department are not essential functions of a corrections officer.

In support of its motion for summary judgment, the Department submitted the affidavit of Sarah Schuette, who is the Director of the Personnel Unit of the Division of Administration/Human Services of the Missouri Department of Corrections. The Department also submitted the affidavit of Gene Bradshaw, a certified defensive tactics instructor for the Department who administered the defensive tactics test to Stratton in December 1993.

Schuette's affidavit sets forth the hiring procedure for the Department and states that corrections officers are tested on various required skills, *i.e.*, first aid, firearms, custody and transportation and defensive tactics and are subject to dismissal if they fail to meet established performance levels. The

affidavit further states that the role of a Corrections Officer I requires the officers to engage in the supervision, control and treatment of inmates including the ability to take appropriate action to prevent escapes and suppress disorders. Bradshaw's affidavit states that Stratton "could not pass the defensive tactics portion of the officer training course and as such is ineligible to be a corrections officer." This affidavit is supported by Exhibit D–2 which is a video tape showing Stratton's attempt to perform the defensive tactics required by the Department. The affidavit and Exhibit D–2 demonstrate that Stratton was unable to successfully perform most of the defensive tactics required of corrections officers. Specifically, the affidavit states that Stratton could not successfully perform the following defensive tactics:

(1) a defense against a kick—he cannot perform this defense because he cannot catch or control the leg of his attacker with his right hand;

(2) a soft empty hand escort to a hard empty hand escort on the right side—he cannot perform this defense on the right side because he cannot grip and control the inmate's right wrist; he cannot perform this activity on the left side because he cannot grasp and control the elbow during the takedown maneuver;

(3) a one-hand grab to his right wrist—he cannot perform this defense because he cannot grab and control the wrist as he windmills out of the grasp; he is also unable to control the inmate's left wrist as he converts the reverse wrist lock into a come-a-long;

(4) a one-hand grab to the chest escape—he cannot perform this defense because he cannot control the inmate's right hand to grasp it off his chest nor can he control the wrist lock when he slides his left hand up to the elbow to perform the takedown; he cannot control the inmate's left wrist as he tries to create forearm to forearm pressure;

(5) a defense to a right-hand club attack then to a takedown—he cannot perform this defense to a left-hand club attack and then execute a takedown because as he blocks the attacking arm with his right hand and twists around the attacking arm, he cannot grab his left arm for leverage against the neck;

(6) a defense against a vertical knife attack with an inmate's right hand—he is unable to perform this defense because he cannot grasp the inmate's right wrist with his right hand; he is also unable to successfully execute the takedown from a left-handed vertical knife thrust because he cannot control the inmate's left forearm with his right hand;

(7) a defense against a diagonal or upward thrust knife attack by an inmate—he cannot defend from the right-handed attack because he cannot grasp the opponent's right wrist with his right hand; he cannot defend from the left-handed attack because he cannot grasp the inmate's left elbow or forearm as required for the takedown;

(8) a rear body lock escape to a come-a-long with his hands either free or pinned when the inmate's left hand is on top—he cannot perform this defense because he cannot maintain the pressure on the inmate's left wrist as part of the reverse wrist lock and cannot maintain pressure on the left hand as he transitions into a come-a-long; he cannot perform this defense with the inmate's right hand on top because he could not successfully grasp the inmate's right hand to peel the top hand away.

The evidence presented by the Department shows that the role of a Corrections Officer I involves the supervision, control and treatment of inmates. The record further shows that corrections officers are required to take appropriate actions to prevent escapes and suppress disorder. In order to enable the corrections officers to effectively perform their duties in controlling inmates and suppressing disorder, the Department has selected and approved various defensive tactics to be used by the corrections officers. It is essential that the corrections officers be able to adequately perform the defensive tactics in order to control inmates and suppress disorders as well as to protect themselves and others.

The evidence presented by the Department, as well as Stratton's own admissions,

demonstrates that Stratton was unable to successfully perform most of the defensive techniques required by the Department. Since Stratton has not shown that he is capable of performing the essential functions of a corrections officer with or without reasonable accommodation,[3] he has failed to demonstrate that he has a statutorily protected handicap. Therefore, he has not met his burden of establishing a prima facie case of handicap discrimination. Accordingly, we find that the Department was entitled to summary judgment.

The judgment is affirmed.

All concur.

---

**3.** In support of his motion for summary judgment, Stratton submitted the affidavit of Edgar Hunt, a retired employee from the Department of Corrections, who stated that he believed Stratton was able to perform the activities with a skill level consistent with the level required of a Corrections Officer I. However, this affidavit was not filed in response to the Department's motion for summary judgment and Stratton concedes that Hunt has no training or experience in evaluating the defensive tactics required by the Department.