No. 95-2819

Jo Anne Allison,                          *
                                          *
          Plaintiff-Appellee,             *    Appeal from the United States
                                          *    District Court for the
     v.                                   *    Western District of Missouri.
                                          *
Department of Corrections; Dora *
B. Schriro, Director,                     *
Department of Corrections;                *
George Lombardi, Director,                *
Division of Adult Institutions;  *
Mike Groose, Superintendent,              *
Jefferson City Correctional      *
Center,                                   *
                                          *
          Defendants-Appellees.           *


Submitted:  March 13, 1996

Filed:  August 30, 1996

Before McMILLIAN, BEAM, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

     Jo Anne Allison brought this action alleging claims of discrimination on the basis of disability in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12112, and the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794.  The individual defendants (Dora B. Schriro, Director of the Missouri Department of Corrections; George Lombardi, Director of Adult Institutions; and Mike Groose, Superintendent of the Jefferson City Correctional Center) appeal the district court's denial of their motion for summary judgment based on qualified immunity.  We reverse.

Jo Anne Allison is a former employee of the Missouri Department of Corrections, where she served the Department as a Correctional Officer I (CO I). The state merit system defines the CO I job classification, stating that a CO I "performs a variety of assignments involving the supervision, control and treatment of inmates in a state adult correctional facility." (Appellants' App. at 94.) The definition offers a nonexhaustive list of work examples that require a CO I, among other things, to work in all parts of the prison, to "[s]upervise[] movement of inmates inside and outside the facility," and to "take[] required action during emergencies to prevent escapes and suppress disorders." (Id.)

On May 13, 1992, Allison injured her back at work. In July 1992, after exhausting her sick leave, Allison took "leave without pay" status because she was physically unable to return to work. Following a fusion of her cervical spine and a period of rehabilitation, her physician reported to the Department that Allison could return to work in a control room position as of January 25, 1993. Allison's physician specifically noted, however, that she should not work in combat or conflict situations where she might have to restrain an inmate.

Given Allison's medical restrictions, George Lombardi, the Director of Adult Institutions, advised Allison that she would be terminated effective February 2, 1993, unless she could obtain a full release from her doctor that would allow her to perform all of the duties listed for the CO I classification. Allison never received a full release from her doctor, and the Department did not allow her to return to work with limitations that would prevent her from performing all of the duties required of a CO I, which include the ability to maintain physical control of inmates in conflict situations. The Department of Corrections terminated Allison's employment on February 2, 1993.

In October 1993, Allison filed an application for social security benefits, claiming that she was then totally disabled. On March 2, 1994, the Social Security Administration denied her application, finding as follows: "We realize you are unable to work at the present time, but you should recover within twelve months of October 1, 1993, to return to your past job as a correction officer." (Appellants' App. at 463.) The Missouri State Employees Retirement System allowed Allison to receive disability benefits without any adversarial proceeding.

In August 1994, Allison brought this action against the Department of Corrections, two individual department and division directors, and the superintendent of the facility where she was employed (Schriro, Lombardi, and Groose), alleging workplace discrimination on the basis of disability and failure to accommodate in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112; Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; and the Missouri Human Rights Act, Mo. Ann. Stat. § 213.055.1(1). Specifically, Allison asserted that even with her physical restrictions, she was otherwise qualified to perform all of the duties required of a CO I that are necessary while stationed only in the control room or the guard towers. The defendants moved for summary judgment, asserting that (1) Allison is not "otherwise qualified" within the meaning of the ADA because (a) she previously stated that she is totally disabled and she should be judicially estopped from denying it now, and (b) she cannot perform the essential job functions of a CO I; (2) she is not entitled to compensatory or punitive damages; (3) Eleventh Amendment immunity bars jurisdiction of the pendent state claim; and (4) the individual defendants are entitled to qualified immunity from suit.

The district court granted summary judgment in part, dismissing the pendent Missouri Human Rights Act count on Eleventh Amendment grounds and concluding that Allison is not entitled to

3

punitive damages. The district court denied summary judgment on the remaining issues. Relevant to this appeal, the district court denied summary judgment to the individual defendants on the basis of qualified immunity, concluding that material issues of fact existed on the issue of whether a reasonable official in the defendants' position would have known that the act of terminating Allison would violate her rights.

The individual defendants appeal the district court's denial of summary judgment on their claim of qualified immunity.

## II.

We initially pause to consider our jurisdiction to hear this appeal. A district court's denial of qualified immunity is immediately appealable as a final decision under the collateral order doctrine where "(1) the defendant [i]s a public official asserting a defense of `qualified immunity,' and (2) the issue appealed concern[s], not which facts the parties might be able to prove, but, rather, whether or not certain given facts show[] a violation of `clearly established' law." Johnson v. Jones, 115 S. Ct. 2151, 2155 (1995) (quoting Mitchell v. Forsyth, 472 U.S. 511, 528 (1985)).

Allison contends that we lack jurisdiction over this appeal because the district court denied summary judgment on the basis of disputed issues of fact. See id. at 2153 (holding that a determination of whether a triable issue of fact exists in the pretrial record is not immediately appealable). To the contrary, the individual defendants contend that the only issue in this appeal is a question of law. See id. at 2156 (noting that a denial of qualified immunity is immediately appealable so long as it turns on an issue of law; namely, "the purely legal issue [of] what law was `clearly established'"). The district court denied the individual defendants' claims of qualified immunity, stating,

4

"[t]his court cannot say that there is no genuine issue of material fact as to whether a reasonable official would have known that their alleged actions violated plaintiff's rights."  (Appellants' Addend. at 12.)

The crux of the individual defendants' argument is that their actions were reasonable given their knowledge at the time of Allison's termination. This issue is immediately appealable upon the denial of a qualified immunity claim.  The Supreme Court has explained that "Johnson permits [a public official] to claim on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the Harlow [v. Fitzgerald] standard of `objective legal reasonableness.'"  Behrens v. Pelletier, 116 S. Ct. 834, 842 (1996).  See also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (stating the standard of objectively reasonable conduct).  Accordingly, we conclude that we have jurisdiction to consider the legal question of whether, in view of the facts that the district court deemed sufficiently supported for summary judgment purposes, the individual defendants' conduct was objectively reasonable given their knowledge and the clearly established law.

To the extent the individual defendants assert issues concerning what facts Allison may or may not be able to prove at trial, we lack jurisdiction to consider them in this qualified immunity appeal.  For instance, we do not have jurisdiction to consider the individual defendants' arguments regarding allegedly conflicting statements made by Allison in a social security application and an affidavit.  Because both statements were made after Allison was terminated, they are not relevant to the qualified immunity issue -- whether the individual defendants acted reasonably given their knowledge at the time of her discharge.  We likewise lack jurisdiction to review the district court's determination that material issues of fact remain for trial on the merits of Allison's claims, such as whether she is an otherwise

qualified individual within the meaning of the relevant Acts and whether the ability to physically restrain inmates is an essential function of the CO I job classification. These issues will be resolved at trial and are appealable only after a final judgment has been rendered.

We now consider the merits of this limited appeal, which is whether the individual defendants are entitled to qualified immunity.[1] Government officials are entitled to qualified immunity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

---

[1]We have held that for claims arising under the Rehabilitation Act, public officials are entitled to qualified immunity from liability unless they violated an employee's clearly established rights under the Act and reasonably should have known they were doing so. Lue v. Moore, 43 F.3d 1203, 1205 (8th Cir. 1994). We have not had occasion to specifically determine whether public officials are entitled to qualified immunity under the ADA. Allison included one brief point contending that there is a question of whether qualified immunity is available in the context of this case. In the same breath, however, she argued that individual liability is implied because the doctrine of respondeat superior applies under the Acts.

At oral argument, Allison modified her argument, claiming for the first time that the ADA does not provide a basis for individual liability so there is no need for or purpose to be served by applying qualified immunity in this context. See Mason v. Stallings, 82 F.3d 1007, 1009-1010 (11th Cir. 1996) (holding qualified immunity was not designed for cases such as those arising under the ADA because the ADA does not provide for individual liability) (decided after oral arguments in Allison's case and not submitted to this court by the parties). The parties did not thoroughly brief or argue this issue, and there is no indication that Allison raised it before the district court. The thrust of the arguments in this appeal concern whether the individual defendants are entitled to qualified immunity, not whether the ADA provides for individual liability. Hence, we decline to address, and save for another day, the issue of whether the ADA provides for individual liability. It is sufficient for this appeal to note that Allison has clearly sued these defendants in their individual, as well as official, capacities (Appellants' App. at 12); and if individual liability is possible, then qualified immunity should be an available defense for public officials in the ADA context, as it is under the Rehabilitation Act.

known."  Harlow, 457 U.S. at 818.  "[W]e must ask whether that law could have been violated given the information available to the defendants at the time."  Reece v. Groose, 60 F.3d 487, 491 (8th Cir. 1995).  We make this determination in view of the conduct that the district court deemed sufficiently supported for purposes of summary judgment, and where the district court did not identify the particular conduct that it deemed adequately supported, we view the facts in the light most favorable to the nonmoving party.  Behrens, 116 S. Ct. at 842 (citing Johnson, 115 S. Ct. at 2159).

The clearly established law for this case stems from the ADA and the Rehabilitation Act (the Acts).  Because the same basic standards and definitions are used under both Acts, cases interpreting either are applicable and interchangeable for purposes of our discussion.  See Wooten v. Farmland Foods, 58 F.3d 382, 385 n.2 (8th Cir. 1995); Vande Zande v. Wisconsin Dep't of Admin., 44 F.3d 538, 542 (7th Cir. 1995).  An employer within the definition of each Act violates the Acts when that employer discriminates on the basis of a disability by, among other things, discharging an employee who is an otherwise "qualified individual with a disability."  42 U.S.C. § 12112(a); 29 U.S.C. § 794(a).  The Acts and their implementing regulations provide specifically that discrimination includes an employer's act of not making "reasonable accommodations" for the known limitations of an "otherwise qualified individual with a disability," unless such accommodation would impose an "undue hardship" on the business.  42 U.S.C § 12112(b)(5)(A).

Allison claims she was dismissed from her job as a CO I "when she advised her supervisors that she had physical limitations resulting from a work-related spinal injury, had permanent medical restrictions from involvement in inmate combat or conflict situations, and would need an accommodation to be able to perform the essential functions of her position."  (Appellee's Br. at 6.)  Allison requested the accommodation that she be permanently placed

7

in certain CO I posts, such as the guard tower or control center, where physical control of inmates is not routinely required. The Department argued that the ability to restrain inmates is an essential function of all CO I positions because the Department needs the flexibility to transfer CO I's among different posts and because there always exists the potential for an emergency situation where the Department would need all available CO I's to aid in restraining inmates. The district court concluded that there was a genuine issue of material fact in dispute concerning whether inmate control is an essential function of all CO I posts and whether the Department could reasonably accommodate Allison's disability.

In its qualified immunity determination, the district court specifically credited the following undisputed evidence: The individual defendants, high ranking employees of the Department of Corrections, were aware of the ADA and the Rehabilitation Act and made definite policy decisions regarding them. Director Lombardi testified that for several years the Department has had a policy to dismiss any CO I who is not capable of performing 100 percent of the required duties of that job classification. All directors, including the individual defendants, endorsed the policy. The directors decided not to change the policy even though they knew that in 1994, a jury had found in favor of a CO I who had been dismissed after attempting to return to work with a physical limitation. Further, in 1992, the Missouri Human Rights Commission (MHRC) twice ordered the Department of Corrections to stop discriminating against individuals with disabilities in the employment context.

Accepting these factual premises, we conclude that the individual defendants acted reasonably in light of the clearly established law at the time of Allison's termination in 1993. The 1994 jury decision has no bearing on the qualified immunity determination because it occurred after Allison's employment was

8

terminated.  The two 1992 MHRC orders to stop discriminating against individuals with disabilities pertained to situations very different from Allison's.  Unlike this case, neither of the incidents triggering MHRC's orders involved an individual whose disability actually affected that individual's ability to perform 100 percent of the duties required for the classification of CO I.  Allison's disability, by express restriction from her doctor, prohibited her from being involved in situations that might require her to control or combat inmates.  Thus, the prior MHRC orders would not give the individual defendants reason to believe that they must accommodate an individual who is unable to restrain inmates.

Furthermore, and most importantly, the clearly established law in 1993 did not indicate that it is a violation of the Acts to discharge a correctional officer who is unable to physically restrain inmates.  To the contrary, the Supreme Court had indicated that the Rehabilitation Act does not require an employer to disregard the disabilities of handicapped individuals.  See Southeastern Community College v. Davis, 442 U.S. 397, 405 (1979).  The Court explained that individuals must be qualified for the job "in spite of" a disability, not "except for" the limitations of the disability.  Id. at 406.  Applying this Supreme Court precedent, we expressly stated in 1984 that an individual with a disability "may be required to meet legitimate physical qualifications essential to the job." Simon v. St. Louis County, Mo., 735 F.2d 1082, 1084 (8th Cir. 1984).

In Simon, a police officer, who was a paraplegic due to an injury sustained in the line of duty, brought an action under the Rehabilitation Act because the police department refused to reinstate him as a commissioned officer.  735 F.2d at 1083.  Simon was unable to satisfy all of the physical requirements of a commissioned officer, partly because he lacked the physical capability to effect a forceful arrest.  Id.  Simon contended that

9

there were positions in the police department where an officer would not likely be called upon to make a forceful arrest. Id. at 1084. The police department maintained that the requirement was reasonable and necessary to ensure efficient police work. Id. After remanding for a specific determination on this issue, we held that the district court did not clearly err in finding that the forceful arrest requirement was necessary to the job. Id. at 1085. Allison has cited no similar cases holding to the contrary.

The clearly established law of Simon is relevant to determining whether the defendants acted reasonably at the time of Allison's discharge (the issue in this limited qualified immunity appeal), but will control the merits of this case only to the extent that similar fact-findings emerge at trial.[2] Nevertheless, absent any then-existing law to the contrary, the individual defendants at the time of Allison's termination were free to rely on the principles enunciated in Simon. We conclude that the individual defendants acted reasonably in light of the clearly established law at the time by adhering to their policy that a CO I must be capable of restraining an inmate, even while stationed in posts where inmate contact is the exception. Thus, the district court erred in concluding that the individual defendants were not entitled to qualified immunity.

---

[2]We note that the Missouri Court of Appeals has recently determined as a matter of state law that "[i]t is essential that the corrections officers be able to adequately perform the defensive tactics in order to control inmates and suppress disorders as well as to protect themselves and others." Stratton v. Missouri Dep't of Corrections and Human Resources, 897 S.W.2d 1, 5 (Mo. Ct. App. 1995). Because Stratton occurred after the decision to terminate Allison was made, it may be relevant on the trial of the merits of this case, but it does not figure into our qualified immunity analysis.

## III.

Accordingly, we reverse the district court's denial of qualified immunity to the individual defendants (Dora B. Schriro, George Lombardi, and Mike Groose), and we remand for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

11