

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00038-CR

_____

DONALD JACK ROBERTSON, II, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 26643

Before Morriss, C.J., Burgess and Moseley,* JJ.
Memorandum Opinion by Justice Moseley

_____

*Bailey C. Moseley, Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

A Lamar County jury convicted Donald Jack Robertson, II, of continuous sexual abuse of a child younger than fourteen years of age and indecency with a child by sexual contact. In accord with the jury's verdict, the trial court sentenced Robertson to sixty years' imprisonment for continuous sexual abuse. For indecency with a child, the trial court sentenced Robertson to twelve years' imprisonment and ordered him to pay a $10,000.00 fine. The trial court further ordered the sentences to run consecutively.

On appeal,[1] Robertson argues that the trial court erred in (1) admitting extraneous-offense evidence of Robertson's sexual assaults against other children, (2) sustaining the State's hearsay objection to a police report, (3) concluding that the Health Insurance Portability and Accountability Act of 1996 (HIPPA) barred the introduction of a child's medical records containing a recantation of an allegation of sexual abuse, (4) allowing the State to present an expert witness on grooming, (5) overruling Robertson's request for a second court-appointed expert to assist in preparing a defense, and (6) overruling Robertson's request for a free transcript of a pretrial hearing. He also argues that his punishment was not decided by a legally impaneled jury.

We find no abuse of discretion in any of the trial court's evidentiary rulings which were preserved for our review. We further conclude that the trial court did not abuse its discretion in overruling Robertson's requests for a second court-appointed expert and pretrial transcript and that Robertson's jury complaint is waived. Accordingly, we affirm the trial court's judgment.

---

[1]Robertson also appeals from three counts of sexual assault of a child in companion cause number 06-18-00037-CR.

2

## I.    Factual Background

The child victim in this case was Robertson's daughter, Jamie,[2] who testified about the abuse she suffered by Robertson after he divorced her mother.  According to Jamie, Robertson began touching her on her breasts, buttocks, and vagina when she was seven years old.  Jamie testified that the touching happened on several occasions and made her feel uncomfortable.  Jamie also testified that Robertson would kiss her inappropriately, made her touch his privates, and did not heed her pleas to stop his abuse.  According to Jamie, the abuse lasted until she was nine or ten years old.

Charges were filed against Robertson after Jamie made her outcry of sexual abuse against him in 2010.  However, Robertson absconded before his 2011 trial and was not located until November 23, 2015.  These charges were consolidated for trial with charges filed against Robertson for alleged abuse of his niece, Darla.

Darla testified that she moved in with Robertson when she was in the eighth grade.  According to Darla, she was fourteen years old when she first engaged in oral sex and sexual intercourse with Robertson.  Darla described several other sexual encounters with Robertson and testified that the sexual activity lasted until she was fifteen.  In our companion case, Robertson appeals from three counts of sexual assault of Darla.

---

[2]We will use pseudonyms when referring to the names of any person who was a minor at the time an offense was committed.  *See* TEX. R. APP. P. 9.10(a)(3).

## II.     There Was No Abuse of Discretion in the Evidentiary Rulings Preserved for our Review

### A.     Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). Abuse of discretion occurs only if the decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *see Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). We may not substitute our own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

### B.     The Trial Court Did Not Abuse Its Discretion in Admitting Extraneous-Offense Evidence

In his first point of error on appeal, Robertson argues that the trial court erred in admitting testimony regarding extraneous offenses committed by Robertson against three children, Tabitha, Mandy, and Jessica, over his Rule 403 of the Texas Rules of Evidence objection. We disagree.

By statute, when a defendant is tried for a sexual offense committed against a child under seventeen years of age, the State may, notwithstanding Rules 404 and 405 of the Texas Rules of Evidence, introduce evidence that the defendant has committed a separate sexual offense against another child "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37, §§ 1–2 (West 2018). Thus, in cases like the one before us, Article

4

38.37 of the Texas Code of Criminal Procedure permits the introduction of evidence "in a trial of a defendant for the enumerated sexual crimes against children . . . that the defendant has committed certain offenses against a *nonvictim* of the charged offense." *Belcher v. State*, 474 S.W.3d 840, 844 (Tex. App.—Tyler 2015, no pet.).[3]

However, "the admission of evidence under Article 38.37 'is limited by Rule 403's balancing test, which permits admission of evidence as long as its probative value is not substantially outweighed by its potential for unfair prejudice.'" *Fahrni v. State*, 473 S.W.3d 486, 492 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Bradshaw v. State*, 466 S.W.3d 875, 882 (Tex. App.—Texarkana 2015, pet. ref'd)). When a trial court conducts a Rule 403 balancing test,

> it must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). In any given case, "these factors may well blend together." *Id*. at 642.

With respect to the first factor in the balancing test, evidence of a separate sexual offense against a child admitted under Article 38.37 is probative of a defendant's character or propensity to commit sexual assaults on children. *See Bradshaw v. State*, 466 S.W.3d 875, 883 (Tex. App.—

---

[3]Before such evidence is introduced, the trial court must conduct a hearing outside the presence of the jury to "determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a (West 2018).

Texarkana 2015, pet. ref'd). At trial, Tabitha testified that her father married Robertson's sister, Lucy, and that Robertson babysat her when she was six years old. According to Tabitha, Robertson sexually molested her by touching her vagina. Tabitha testified that she immediately made an outcry to her father, but recanted after Lucy threatened her by beating her and holding her head down in the neighbor's pool. The State also introduced extraneous-offense evidence through Robertson's nieces, Mandy and Jessica, who had moved into a mobile home next to Robertson's residence. Mandy testified that Robertson raped her when she was twelve and described the incident in detail. Jessica testified that Robertson woke her while she was sleeping and had oral sex and sexual intercourse with her when she was fourteen. This evidence was probative of Robertson's character or propensity to commit sexual assaults on children who were either members of his family or somehow associated with members of his family. We conclude that this factor weighed strongly in favor of admission.

As to the second factor, Robertson contends that the State's need for the evidence was low given Jamie's and Darla's "strong and direct evidence of the offenses charged." However, Robertson alleged that Jamie and Darla had fabricated their allegations at trial. During his opening statement, Robertson suggested that Robertson's divorce from Jamie's mother provided "the motivation for these claims." Robertson also argued that the alleged incidents had taken place many years ago, that Jamie and Darla could not specify the exact dates of the alleged abuse, and that there was no biological or eyewitness evidence supporting the claims.

By adopting Article 38.37, Section 2, the Legislature recognized that in child sex offenses, "there is typically very little evidence to assist prosecutors with proving their cases." *Id*. at 884

6

(quoting Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 12, 83d Leg., R.S. (2013)). Because there was no biological evidence or third-party eyewitness to the assaults, the State had a considerable need for the evidence. Additionally, Robertson claimed that the allegations were false and further told the jury, "I can't tell you why young women would make claims like this." "Rule 403 'should be used sparingly to exclude relevant, otherwise admissible evidence that might bear on the credibility of either the defendant or complainant in such 'he said, she said' cases [involving sexual assault].'" *Id*. at 883–84 (quoting *Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009)). Accordingly, the second factor also weighed in favor of admission.

With respect to the third factor, we recognize that the inherently inflammatory and prejudicial nature of evidence of extraneous sexual offenses against children does tend to suggest a verdict on an improper basis. *Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd). Thus, the third factor weighed against admission.

As to the fourth factor, the ultimate issues in this case were whether Robertson had committed the acts of sexual abuse as alleged in the State's indictment. The trial court mitigated the tendency of the extraneous-offense evidence to confuse or distract the jury from the main issues at trial by instructing them that such extraneous-offense evidence could only be considered in determining whether Robertson committed the acts alleged in the indictment. Thus, the trial court's charge redirected the jury to the main issues in the case. We find the fourth factor weighed in favor of admission.

The fifth factor refers to evidence such as highly technical or scientific evidence that might mislead the jury because it is not equipped to weigh the probative force of the evidence.

7

*Gigliobianco*, 210 S.W.3d at 641. Here, the evidence in question was neither scientific nor technical and pertained to matters including victim credibility that could easily be understood by a jury. We find the fifth factor weighed in favor of admission.

As to the last factor, Robertson argues that the presentation of the extraneous-offense testimony included three witnesses presented by the State during the guilt/innocence phase and comprised "a total of sixty[-]five pages" of the reporter's record. However, the State presented a total of fourteen witnesses during the three-day trial, which comprised hundreds of pages. We find that the presentation of the extraneous-offense evidence did not consume an inordinate amount of time. On this record, we conclude that the last factor favored admission.

We find that the trial court, after balancing the Rule 403 factors, could have reasonably concluded that the probative value of the extraneous-offense evidence was not substantially outweighed by the danger of unfair prejudice and the other factors in the rule. Consequently, we find that the trial court did not abuse its discretion in admitting the extraneous-offense evidence. We overrule Robertson's first point of error.

### C. Exclusion of Police Report Was Not an Abuse of Discretion

Robertson sought to admit into evidence a detective's supplemental police report created during his investigation of Jamie's outcry of sexual abuse. The report documented the detective's conversations with Mandy. After the detective testified that the report was generated through the course of the criminal investigation, the trial court sustained the State's hearsay objection. Robertson argues that the trial court erred in excluding the evidence because the police report was admissible under Rule 803(8) of the Texas Rules of Evidence. We disagree.

8

Rule 803(8) states, in relevant part:

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

. . . .

(8)    *Public Records.* A record or statement of a public office if:

(A)    it sets out:

. . . .

(ii)    a matter observed while under a legal duty to report, *but not including, in a criminal case, a matter observed by law-enforcement personnel.*

TEX. R. EVID.803(8)(A)(ii) (emphasis added). Under the plain language of Rule 803(8)(A)(ii), reports made by law enforcement personnel pursuant to their official duties are inadmissible hearsay. *See Cole v. State*, 839 S.W.2d 798, 811 (Tex. Crim. App. 1990) (op. on reh'g); *Kennedy v. State*, 193 S.W.3d 645, 658–59 (Tex. App.—Fort Worth 2006, pet. ref'd). Therefore, we conclude that the trial court did not abuse its discretion by excluding the proffered police reports from evidence. We overrule Robertson's second point of error.

**D.    Robertson Waived his Complaint Regarding Exclusion of Therapy Notes**

In his third point of error, Robertson complains of the trial court's exclusion of therapy notes created by Dr. Dante Virgos, a psychiatrist with the Holliner Group, pertaining to Tabitha's treatment from 2003 to 2004. The State objected to the notes under HIPPA privacy rules, which prohibit the disclosure of protected health information except in specified circumstances. *See* 45 C.F.R. § 164.502 (West, Westlaw through Dec. 6, 2018). Specifically, the State argued that the procedures permitting disclosure of health information in judicial proceedings had not been

9

followed because Tabitha was never notified of the request to release her therapy notes.[4]

Robertson admitted that Tabitha had not been informed of the release of the records containing the

therapy notes. The trial court then inquired whether satisfactory assurances were tendered under

---

[4]In pertinent part, HIPPA Section 164.512(e) provides:

(1)      Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:

(i)      In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or

(ii)      In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:

(A)      The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or

(B)      The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

(iii)      For the purposes of paragraph (e)(1)(ii)(A) of this section, a covered entity receives satisfactory assurances from a party seeking protected health information if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:

(A)      The party requesting such information has made a good faith attempt to provide written notice to the individual (or, if the individual's location is unknown, to mail a notice to the individual's last known address);

(B)      The notice included sufficient information about the litigation or proceeding in which the protected health information is requested to permit the individual to raise an objection to the court or administrative tribunal; and

(C)      The time for the individual to raise objections to the court or administrative tribunal has elapsed

45 C.F.R. § 164.512(e).

Section 164.512(e)(1)(ii)(A) in advance of the record release and denied admission of the therapy notes after Robertson confirmed that he had made only oral assurances to the Holliner Group.

The trial court noted its concern of a HIPPA violation since the proper protocol had not been followed. After the trial court's ruling, Robertston stated, "Your Honor, respectfully, the Defense does not have any interest in admitting any documents" and explained that it simply sought to introduce Virgos' in-court testimony. During a discussion on whether Virgos should be allowed to testify despite being omitted from designation as an expert witness, Robertson stated, again, "[T]he records are not being offered, period. Full stop. . . . There is no intention to offer any records here into evidence." Yet, on appeal, Robertson complains only of the trial court's exclusion of records containing Virgos' therapy notes.

Our review of the record demonstrates that Robertson withdrew his proffer of the records containing the therapy notes authored by Virgos. Accordingly, we find that Robertson waived his third point of error and is estopped from seeking appellate relief. *See Woodall v. State*, 336 S.W.3d 634, 644 (Tex. Crim. App. 2011).

### E.     The Trial Court Did Not Err in Admitting Expert Testimony on Grooming

In his fourth point of error, Robertson argues that the trial court erred in allowing expert testimony from Carrie Paschall, a child forensic interviewer at the Dallas Children's Advocacy Center (CAC), on the issue of grooming, which involves, "at its most basic level, testimony describing the common behaviors of child molesters and whether a type of evidence is consistent with" that behavior. *Morris v. State*, 361 S.W.3d 649, 666 (Tex. Crim. App. 2011). A person may offer expert testimony if "qualified as an expert by knowledge, skill, experience, training, or

11

education . . . if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. As a result of Robertson's challenge to Paschall's testimony, the trial court held a Rule 702 hearing to determine her qualifications.

The hearing established that Paschall had been a child forensic interviewer for twenty-two years and had conducted 5,468 interviews during her career. Before her employment with the CAC, Paschall was the child forensic interviewer for the Crimes Against Children Unit of the Tarrant County District Attorney's Office. Paschall testified that she had over 1,000 hours of training "in the field of child abuse" and that 394 hours were related to conducting investigative interviews with children. Paschall had given expert testimony in court approximately sixty-five times on issues of "child abuse dynamics, grooming and recantation."

Robertson concedes that "Paschall's testimony certainly establishes that she has extensive training and experience as a forensic interviewer." However, he argues that Paschall's testimony regarding her experience about grooming behavior was "unspecified and limited." We disagree.

Rule 702 "was designed 'to relax the traditional barriers to opinion testimony.'" *Morris*, 361 S.W.3d at 654 (quoting *Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720 (Tex. Crim. App. 1999)). To evaluate the reliability of expert testimony in fields of study outside the hard sciences, courts must determine "(1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field." *Id.*

12

With respect to the first factor, the Texas Court of Criminal Appeals has already determined that grooming is a legitimate field of expertise. *Id.* at 656.

As to the second factor, "[a] person can, through h[er] experience with child-sex-abuse cases[,] gain superior knowledge regarding the grooming phenomenon." *Id.* at 666–67. Paschall stated that she was qualified to testify about grooming behaviors as a result of the experience and knowledge built through the interviews conducted throughout her career. We agree that Pascall's twenty-two years of experience as a child forensic interviewer demonstrated superior knowledge on the grooming phenomenon. *See id.* at 657 n.38, 662 (courts have found expert testimony on grooming admissible "from experts from a variety of occupational backgrounds," including forensic interviewers); *see also Malone v. State*, 163 S.W.3d 785, 794 (Tex. App.—Texarkana 2005, pet. ref'd).

The last factor was also established in this case. Paschall testified that grooming was "widely discussed" during her core curriculum training, that she had received specialized training on grooming behavior and had attended annual seminars on the issue of grooming conducted by Dr. Jim Tanner, and, that she was therefore trained to "understand and recognize statements that children make as grooming behaviors." Paschall testified that Tanner had conducted a study of convicted sex offenders to gather the information supporting his publication titled "Exploring Sex Offender Grooming," which was provided to Robertson. She informed the court that she would rely on her teachings and on Tanner's paper during her trial testimony. At trial, Paschall began by generally describing and defining grooming behavior and the purposes for the behavior based on her training. She then listed the types of grooming behavior observed in Jamie, Darla, Jessica, and

13

Mandy's testimony and concluded that based on her training and experience, the children's testimony about Robertson's actions was consistent with grooming behavior. We find that Paschall's testimony properly relied on and used the principals involved in the field.

We conclude that all three factors used to evaluate the reliability of Paschall's testimony on the issue of grooming were met. Because we find no abuse of discretion in the trial court's decision to admit Paschall's testimony, we overrule Robertson's fourth point of error.

## III. The Trial Court Did Not Abuse its Discretion in Denying Robertson's Additional Request for an Expert at State Expense

In his fifth point of error, Robertson argues that the trial court erred in denying his additional request for an appointment of an expert witness at state expense. "We review the trial court's failure to appoint an expert witness [to assist an indigent defendant] for an abuse of discretion." *Mason v. State*, 341 S.W.3d 566, 568 (Tex. App.—Amarillo 2011, pet. ref'd) (citing *Deason v. State*, 84 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd)). "The reasonableness of the trial court's decision is determined as of the time it was made." *Id.*

In *Ake v. Oklahoma*, the United States Supreme Court held that due process requires that a defendant have access to materials essential to mounting an effective defense. *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985). Although the State is not required to "'purchase for an indigent defendant all the assistance that his wealthier counterparts might buy,' it must provide him the basic tools to present his defense." *Rey v. State*, 897 S.W.2d 333, 338 (Tex. Crim. App. 1995) (quoting *Ake*, 470 U.S. at 77). "Constitutional entitlement to a court-appointed expert required appellant to make a sufficient preliminary showing before the trial court that the subject of the expert's testimony

14

would likely be a significant factor at trial." *Mason*, 341 S.W.3d at 568 (citing *Ake*, 470 U.S. at 74).

Here, Robertson initially filed a motion for expert assistance from Kim Hart, the Executive Director of the National Child Abuse Defense Resource Center, at state expense. The trial court approved Robertson's request on June 8, 2016, and authorized expenditure of $1,000.00 after an ex parte hearing, which is not included in our appellate record.[5]

Within one month after receiving these funds, Robertson requested additional funds for the appointment of another expert to assist him in sorting out "family members 'piling on' with otherwise unsubstantiable delayed claims about the Defendant." He cited to Tabitha's recantation and inconsistencies in the outcries as support for his need for an additional expert. These reasons for Robertson's request for another expert were similar to the reasons submitted to the court in Robertson's request for Hart's assistance. During an ex parte hearing on his second request, Robertson again argued that an additional expert was required on "the issues of the late outcry, the issues of the integrity of the outcry, and the . . . discount of allegations even though there [was] no serology." The trial court denied Robertson's additional request.

"[I]n any given case, the necessity for the appointment under *Ake* will depend upon whether the defendant has made a sufficient threshold showing of need for the expertise." *Rey*, 897 S.W.2d

---

[5]*Ake* set out three factors that are relevant in determining "whether, and under what conditions, the participation of [an expert] is important enough to preparation of a defense to require the State to provide an indigent defendant with access to competent . . . assistance." *Rey*, 897 S.W.2d at 338 (quoting *Ake*, 470 U.S. at 77). These factors include (1) "the private interest that will be affected by the action of the State," (2) "the governmental interest that will be affected if the safeguard is to be provided," and (3) "the probable value of the additional or substitute procedural safeguards that are sought, and the risk of erroneous deprivation of the affected interest if those safeguards are not provided." *Id*. (quoting *Ake*, 470 U.S. at 77).

at 339. "The threshold showing under *Ake* requires more 'than undeveloped assertions that the requested assistance would be beneficial.'" *Mason* 341 S.W.3d at 568 (citing *Williams v. State*, 958 S.W.2d 186, 192 (Tex. Crim. App. 1997)). "Mere conclusions of defense counsel will not suffice." *Id.* (citing *Norton v. State*, 930 S.W.2d 101, 111 (Tex. App.—Amarillo 1996, pet. refused)). "Rather, the defendant must demonstrate a reasonable probability an expert will provide assistance and denial of expert assistance will cause a fundamentally unfair trial." *Id.* (citing *Norton*, 930 S.W.2d at 106–07; *Davis v. State*, 905 S.W.2d 655, 659 (Tex. App.—Texarkana 1995, pet. ref'd)). "This requires proof by the defendant of his defensive theory supported with factual allegations or evidence of how the requested expert testimony will support the theory." *Id.*

> As explained in *Rey*,
>
> In cases holding that a sufficient showing was not made under *Ake*, the defendant typically has failed to support his motion with affidavits or other evidence in support of his defensive theory, an explanation as to what his defensive theory was and why expert assistance would be helpful in establishing that theory, or a showing that there was a reason to question the State's expert and proof.

*Rey*, 897 S.W.2d at 341.

Here, we find that Robertson has failed to make a sufficient threshold showing demonstrating his need for an additional expert. The trial court had already appointed Hart to address issues similar to the ones raised in Robertson's request for an additional expert. In his second request, Robertson alleged that "the expert sought will testify that there is a recognized family pathology at play in which family members and closely allied unrelated persons rally to falsely identify and impugn an individual family member." However, this statement constituted an unsupported conclusory statement insufficient to meet the threshold showing. Because

16

Robertson's additional request was not supported by affidavit and failed to explain why Hart's testimony would be insufficient on this matter, the trial court could have determined that its appointment of Hart had already provided Robertson with the tools needed to assist Robertson in preparing a defense.

Additionally, Robertson was required to show why expert assistance would be helpful in establishing his defensive theory. His request for the additional expert was for the purpose of challenging the children's credibility. Yet, "the credibility of . . . witnesses . . . is precisely the kind of issue on which courts routinely turn to lay juries for resolution." *Jackson v. State*, 992 S.W.2d 469, 474 (Tex. Crim. App. 1999) (per curiam). "[E]xpert testimony that a particular witness is truthful is inadmissible under Rule 702." *Fuller v. State*, 224 S.W.3d 823, 832 (Tex. App.—Texarkana 2007, pet. ref'd) (alteration in original) (quoting *Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993)). "An expert may not offer a direct opinion on the truthfulness of a child complainant's allegations." *Id.* (citing *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997)). "Moreover, an expert is not permitted to give an opinion that the complainant or class of persons to which the complainant belongs (such as child sexual assault victims) is truthful." *Id.* (citing *Yount*, 872 S.W.2d at 712; *Schutz*, 957 S.W.2d at 70). "This is because experts on child sexual abuse 'are not human lie detectors. Nor are they clairvoyant.'" *Id.* (quoting *Yount*, 872 S.W.2d at 710). The trial court could have also determined that Robertson's request for an expert to testify about the "family pathology at play" which led to "family members 'piling on' with

17

otherwise unsubstantiable delayed claims about the Defendant" constituted a request for appointment of an expert to offer a direct opinion on the truthfulness of the children's allegations.[6]

We conclude that the trial court did not abuse its discretion in denying Robertson's additional request for the appointment of an expert witness. Accordingly, we overrule Robertson's fifth point of error.

## IV. The Trial Court Did Not Abuse its Discretion in Denying Robertson a Free Pretrial Transcript

After a hearing held on June 19, 2017, the trial court determined that Paschall was a qualified expert witness who would be allowed to testify on the issue of grooming. At the end of that hearing, Robertson requested a transcript of the testimony just presented by Paschall, free of charge. In his sixth point of error, Robertson argues that the trial court erred in denying his application for that transcript *in forma pauperis*. We have previously found that the trial court's decision to deny Robertson's request for free transcripts in this same case was one "that involve[d] the trial court's discretion." *In re Robertson*, No. 06-17-00123-CR, 2017 WL 2913878, at *3 (Tex. App.—Texarkana July 10, 2017, orig. proceeding) (mem. op.); *see also Daniels v. State*, 708 S.W.2d 532, 535 (Tex. App.—Dallas 1986, no pet.). Here, we find no abuse of discretion in the trial court's decision.

---

[6]We note that Robertson's second motion also contained a generic statement that he required expert assistance in the areas of "grooming behavior, child development, forensic interviewing of children, and processes of disclosure to include recantation and complaint victims." However, (1) the motion failed to explain how the requested expert would support his defensive theory, (2) Robertson made no mention of these areas during the ex parte hearing, and (3) nothing demonstrated that the four proposed psychologists submitted to the trial court for selection were actually experts in these specific areas related to child sex abuse cases. Rather, the record demonstrates that the focus of Robertson's request was to obtain expert testimony which could be used to challenge the children's credibility. We further note that some of the arguments made on appeal regarding the need for an additional expert differ from the reasons presented to the trial court at the time it made its ruling and will not be considered in our analysis.

18

"No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "[A]s a matter of equal protection, [the State must] provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." *Britt v. N. Carolina*, 404 U.S. 226, 227 (1971). Under this principle, "the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal." *Id.* The United States Supreme Court has identified two relevant factors in determining a defendant's need: (1) the value of the transcript in connection with the defense and (2) the availability of alternative means that would fulfill the same function as a transcript. *Id*.

The first requirement is presumed when a prior proceeding results in a mistrial. *Armour v. State*, 606 S.W.2d 891, 893 (Tex. Crim. App. [Panel Op.] 1980) (citing *Billie v. State*, 605 S.W.2d 558 (Tex. Crim. App. 1980)). Here, however, Robertson was not seeking a free transcript in a prior proceeding but, rather, a transcript of a hearing in the current case which had just concluded. Therefore, he was required "to demonstrate a 'particularized specific' need for the transcription of" Paschall's testimony. *See McKibbon v. State*, 749 S.W.2d 83, 85 (Tex. Crim. App. 1988); *Daniels*, 708 S.W.2d at 535 (holding that the need for a transcript is not presumed unless the requested transcript is of prior trial resulting in a mistrial).

Robertson argues on appeal that the transcript of Paschall's testimony was necessary "to cross-examine and possibly impeach the State's three expert witnesses." Yet, our review of the transcript demonstrated that the purpose of the hearing was only to determine whether Paschall was qualified to testify. Counsel thoroughly cross-examined Paschall regarding her qualifications,

19

but the merits of the case were not discussed during the hearing. Accordingly, the trial court could have determined that there was little value of the transcript with regard to the ultimate issue of whether Robertson had committed the offenses alleged in the State's indictment. Therefore, we find no abuse of discretion in the trial court's conclusion that the first *Britt* factor was unmet.

We overrule Robertson's sixth point of error.

## V. Robertson's Jury Complaint Is Waived

In his last point of error, Robertson argues that his punishment was not decided by a legally impaneled jury because a juror who was excused from the punishment phase of the trial due to medical reasons returned to the courtroom after an alternate juror was seated by the trial court and rendered verdict on punishment. We find this issue unpreserved.

The record demonstrated that the trial court set the punishment trial for a date when the juror, Leslie Whitten, was scheduled to undergo a medical procedure. On hearing this information, the trial court released the juror and replaced that juror with an alternate. However, due to circumstances not indicated in the record, it appears that Whitten was available on the date of the punishment hearing since he indicated that he agreed with the punishment assessed during a jury poll. Robertson, who made no complaint at trial, argues that the alternate juror had already been seated and that Whitten's return resulted in an illegally impaneled jury.

As a general rule, a defendant must make a timely and specific objection to preserve error for appellate review. TEX. R. APP. P. 33.1(a). Robertson acknowledges that he failed to preserve this issue for our review. However, he argues that Whitten's reinstatement constituted fundamental error. Pursuant to Rule 103(e) of the Texas Rules of Evidence, appellate courts may

20

take "notice of a fundamental error affecting a substantial right, even if the claim of error was not properly preserved."  TEX. R. EVID. 103(e).  Fundamental errors fall into "two relatively small categories of errors:  violations of 'rights which are waivable only' and denials of 'absolute systemic requirements.'" *Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002) (quoting *Marin v. State*, 851 S.W.2d 275, 280 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997)).  "Waivable only" rights include the right to the assistance of counsel and the right to trial by jury.  *Id.*  "Absolute, systemic rights" include jurisdiction of the person, jurisdiction of the subject matter, a penal statute's compliance with the separation of powers section of the state constitution, a constitutional requirement that a district court must conduct its proceedings at the county seat, the constitutional prohibition of ex post facto laws, and certain constitutional restraints on the comments of a judge.  *Id.* at 888–89.  Robertson's complaint does not fall into either of the categories of fundamental error.

By way of conclusory statement, Robertson suggests that there was fundamental error because Whitten's reinstatement affected his right to trial by an impartial jury.  Yet, nothing (including Robertson's briefing) suggests that Whitten was not impartial.  Moreover, "the right to trial by impartial jury, like any other right, is subject to waiver. . . . It is not to be regarded, therefore, within the rubric of *Marin v. State*, as a fundamental feature of the system which is not optional with the parties."  *State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008) (citation omitted).

Our conclusion that preservation was required is supported by the possibility under this record that either Whitten returned and was reinstated without objection because he was no longer

21

disabled or that the court reporter had simply included Whitten's name in the jury poll by mistake in place of the name of the alternate juror, who was never mentioned in the punishment transcript. In any event, we find that Robertson was required, but failed, to preserve his complaint by raising it below. We overrule his last point of error.

## VI. Conclusion

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:        November 29, 2018
Date Decided:          January 4, 2019

Do Not Publish